# Young v. The East Ala. Railway Co.

### *Detinue against Common Carrier.*

1. *Secondary evidence of document beyond jurisdiction of court.*—Secondary evidence of the contents of a bill of lading may be received, when it is shown that the document is beyond the jurisdiction of the court, in the hands of a person residing in another State.

2. *Bill of lading in name of shipper.*—When the vendor and shipper of goods takes the bill of lading in his own name, he thereby retains the title in himself, and the carrier can not rightfully deliver the goods to any other person, except on his order, or transfer of the bill of lading.

3. *When carrier may maintain detinue.*—If the carrier, through mistake, or by the fraudulent representations of a third person, wrongfully delivers the goods to a person who has no right to them, he may maintain an action of detinue or trover for them, against the person so receiving them, or any other person to whom he may deliver them.

4. *Relation of bailor and bailee.*—If the goods are delivered by the person so wrongfully receiving them to another carrier, on whom he afterwards gives plaintiff an order for them, and this carrier, accepting the order, and receiving the charges for freight, agrees to deliver them to plaintiff on demand; this creates between them the relation of bailor and bailee.

5. *Bailee cannot set up title in third person, but may deliver to rightful owner.*—As a general rule, the bailee cannot set up the title of a third person, in defense of an action by his bailor; but, if the bailor in fact had no valid title, the bailee may deliver the goods to the rightful owner on demand, or hold them subject to his order on notice and demand, the *onus* of proving that defense resting on him.

APPEAL from the Circuit Court of Etowah.

Tried before Hon. JAMES AIKEN.

This action was brought by J. D. Young against the East Alabama Railway Company, a domestic corporation, to recover a pool table, with the value of the use or hire of the same; and was commenced on 18th July, 1884. The plea of the defendant was the general issue. The evidence showed that the plaintiff purchased the pool table in controversy from M. Milburn for the agreed price of two hundred and fifty dollars. The table was, all the time, in the possession of the depot agents of the defendant at Gadsden, consigned to said Milburn. The depot agent agreed to deliver the table to the plaintiff upon his paying the freight charges due upon it, and producing an order from Milburn, but failed and refused to do so upon plaintiff complying with these terms. It was further shown that the table had been shipped by the Brunswick & Balke Collender Co. of Cincinnati, Ohio, to Collinsville, Ala-

bama, consigned to their own order, and was deposited in the depot of the A. G. S. R. R. Co; that a few days after its arrival, one John Wilson represented himself to the depot agent as the consignee of said table, paid the transportation charges on it, and it was delivered to him; that some time afterwards the table was brought back to the depot at Collinsville and ordered shipped to the said Milburn at Gadsden, over the defendant's railroad.

It was shown by the defendant, against the objection of the plaintiff, that a draft, for the amount of the purchase-money of the pool table, had been sent by the Brunswick & Balke Collender Company of Cincinnati, with a bill of lading attached, to a banking house in Gadsden, for collection; and that said bill of lading stipulated for the delivery of the pool table only upon the order of the shippers—the Brunswick & Balke Collender Company. It was admitted that the depot agent at Collinsville knew, at the time he delivered the pool table to Wilson, that the way-bill showed that it was consigned to the order of the shippers, and that he knew the table he shipped to Milburn, at Gadsden, was the same he had previously delivered to Wilson; that it was upon notice from him that the agent of the defendant at Gadsden refused to deliver the table to the plaintiff. The plaintiff requested the following, among other written charges: "If the jury find that the defendant received the freight from plaintiff when defendant was notified of all the facts in the case, and that defendant has never paid back said freight, or tendered back said freight to plaintiff, then the defendant is estopped from setting up the title of the Brunswick & Balke Collender Company, or of any other third person in defense of this suit"—which charge was refused by the court. Verdict was rendered for the defendant. The admission of parol testimony to show the contents of the bill of lading, and the refusal of the court to give the charges requested by the plaintiff, are here assigned as error.

W. H. Denson, J. L. Tanner, for appellant.

Dunlap & Dorton, and L. A. Dobbs, contra.

SOMERVILLE, J.—1. The bill of lading being shown to have been out of the jurisdiction of the court, in the hands of persons resident in the State of Ohio, the court properly ruled that it was competent to prove the contents of the paper by oral evidence. Under this state of facts such secondary evidence was admissible.—*Gordon v. Tweedy*, 74 Ala. 252; *Martin v. Brown*, 75 Ala. 442.

2. The title and property in the goods in controversy very

obviously did not pass to Milburn under his contract of purchase. The vendors and shippers—the Brunswick & Balke Collender Company of Cincinnati—made themselves the consignees, and by taking the bill of lading from the railroad in their own names, reserved the title in themselves, so that they continued to be the owners of the property.—*McCormick v. Joseph*, 77 Ala. 256. They never authorized the common carrier, the Alabama Great Southern Railroad Company, to deliver the goods to any one except on their order, and it is shown clearly that no such order was given by the transfer of the bill of lading or otherwise.

3. The East Alabama Railroad Company, the defendant in this suit, is shown to have been in the possession of the goods tortiously, the delivery being made to them by the Alabama Great Southern Railroad Company through mistake, and by the fraudulent representations of a third person.

The latter corporation, we may observe here, being a common carrier, and being in the rightful possession of the property as bailee of the original vendors, and this possession being wrongfully displaced, it could, by virtue of its special property in the goods, maintain an action of detinue, or trover, for them, against the defendant, or any other person holding a like tortious possession without title —Story on Bailments, §§ 585, 95.

4. It may be admitted that the defendant railroad company was the bailee of the plaintiff. Although Milburn had no title to the goods, yet he gave to plaintiff an order for them, and the defendant, accepting the order and receiving the charges for freight, agreed to deliver them to the plaintiff on demand. This established between them the relation of bailor and bailee. *Edwards v. Meadows*, 71 Ala. 42.

5-6. The general rule is that the bailee is not permitted to set up a *jus tertii*, or title of a third person, in himself. But where the bailor has no valid title, the bailee may, on demand, deliver the goods bailed to the rightful owner, and this would be a good defense to an action brought by the bailor, the *onus* being on the bailee to establish the defense.—*Powell v. Robinson*, 76 Ala. 423; 2 Kent Com. (12 Ed.) *567. So the bailee may withhold the goods on notice or demand from the true owner, or from one having such a special property in them as would sustain an action of detinue.—2 Herman on Estoppel, § 895. The reason of this rule is, that the bailee of the goods can be in no better situation than the bailor from whom he received them, and the true owner, or other person entitled to their custody and having a special property in them, can sue either the bailor or bailee, and recover from them. And no man shall be rebuked by the law for doing what the law would compel him to do.

[Tillman v. De Lacy.]

In this case, as we have said, neither the plaintiff nor the defendant—the bailor nor bailee—had any title to, special property in, or rightful possession of the goods. The original vendors in Cincinnati were invested with the legal title, and the Alabama Great Southern Railroad Company with a special property in the goods which would support an action *in specie* for them. The notice and demand from the latter constituted sufficient authority to stop delivery to one having no title or property in them. The defendants' duty not to deal tortiously with the property of an innocent third person can not be affected by the failure of the depot agent, first to tender back to the plaintiff the amount of freight collected on the goods. The law will not compel the defendant to commit a tort by delivering the goods to the plaintiff, because the agent agreed to do so in consideration of the payment of freight.

The rulings of the court were all in harmony with these views, and we find no error in them.

The judgment is affirmed.