# Langston v. The State.

### Indictment for Larceny.

1. *Property subject to larceny* —A boiler and pump used to pump water for stock on a plantation and to irrigate the land, and intended as a permanent improvement on the plantation, but arranged on skids not imbedded in the ground, so as to be readily movable from place to place, and which are in fact moved as occasion requires, are not so attached to the freehold as to lose their character as chattels, and the felonious taking and carrying away of valves attached to such boiler and pump is larceny.

2. *Same* —Valves screwed to iron pipes which are arranged around the inside of a building and attached to the building by staples, and used in a manufacturing business, are part of the freehold, and are not subjects of larceny.

APPEAL from the City Court of Montgomery.

Tried before the Hon. T. M. ARRINGTON.

The defendant, Charles Langston, was convicted of larceny, and appeals.

The court charged the jury, "that so far as the evidence was concerned in this cause, he would hold that the property stolen was not a fixture, but was personal property." The defendant excepted to this charge. He also excepted to the refusal of the court to give the following written charges requested by him; (1.) "The court charges the jury, if they believe the evidence they must find the defendant not guilty of the offense charged in the first count of the indictment." (2.) "The court charges the jury, if they believe the evidence they must find the defendant not guilty of the offense charged in the second count of the indictment." (3.) "The court charges the jury, that if they are reasonably satisfied from the evidence that the brasses or cocks described in the first count were attached to a steam pump, that said pump was screwed on or attached to an iron

boiler of great weight, that said boiler and pump were put on the plantation of Mrs. Scott, with intention of using them as a fixture, or intended as a permanent improvement, then they must find the defendant not guilty as to said first count." (4.) "The court charges the jury, that if they are reasonably satisfied from the evidence that the brasses or cocks described in the second count were screwed on or permanently attached to iron pipes; that said iron pipes were permanently attached to a house used for manufacturing purposes, and said house built on the ground or attached to the freehold, and that they were built with the intention of manufacturing,—then said brasses or cocks were a fixture, and they must find the defendant not guilty of the offense charged in said second count."

CHAS. WILKINSON, for appellant, cited *Tillman v. DeLacy*, 80 Ala. 103 ; *Dudley v. Hurst*, 67 Md. 44; *McRea v. Central National Bank*, 66 N. Y. 489 ; *Winslow v. Merchants Ins. Co.*, 4 Metc. 314: *Meigs' Appeal*, 62 Pa. St. 372 ; *Quimby v. Manhattan Cloth Co.*, 24 N. J. Eq. 260; ·8 Am. & Eng. Ency. of Law, 43.

WM. L. MARTIN, Attorney-General, for the State, cited 17 Am. Dec. 680 ; 42 Am. Rep. 446.

STONE, C. J.—The appellant in this case was indicted and convicted of the larceny of a certain number of valves or cocks. The indictment contained two counts each in the common form for larceny. The first count charges that the valves were the property of M. C. Scott, and the second that the subject of the larceny was the property of the Montgomery Furnace & Chemical Company. There was no conflict in the testimony, and the assignments of error present for our consideration the rulings of the lower court upon the charges given and refused.

The testimony was to the effect that three of the valves alleged to have been stolen were attached to a boiler and pump, which had been purchased by M. C. Scott and carried out to his wife's plantation, and this machinery was used for the purpose of pumping water for his stock, and to irrigate his land. Mr. Scott further testified, as stated in the bill of exceptions, "that he intended said boiler and pump to be a permanent improvement on the plantation. That said boiler and pump could be moved, and had been moved up and down the river so as to more conveniently pump water ; that said boiler was on skids, that is wooden

[Langston v. The State.]

logs, and the skids lay on brick which lay on the ground, and were not imbedded in the ground; that said boiler could be put on a wagon and carried to any point desired." It was further shown that the other valves alleged to have been stolen belonged to the Montgomery Furnace & Chemical Company. The Montgomery Furnace & Chemical Company owned a building that was built and used for manufacturing purposes. Around the inside of said building there were arranged iron pipes, and these pipes were attached to the building by staples. The pipes were used in the manufacturing business, and it was necessary to have them, in order to carry on the manufacturing business contemplated by the Montgomery Furnace & Chemical Company. At the ends of these said pipes, and on the joints thereof, the valves or cocks, alleged to have been stolen, were screwed. These valves were used in, and were necessary to carry on, the said manufacturing business.

The question presented for our consideration is whether the articles alleged to have been stolen, had, on account of their annexation to the freehold, lost their character as personal property, and become a part of the realty, in such sort as not to be subjects of larceny. The subject of fixtures is one of great difficulty, and has evoked much discussion, and a great contrariety of opinion. When doubt arises as to whether or not a certain piece of property is a fixture, this doubt must be decided by the circumstances of each individual case, as they may be influenced by certain cardinal rules which have now become criteria for the decision of the question. If the article in question meets the requirements of these rules, its character as a fixture is determined. These rules, as gathered from the adjudicated cases, have been succinctly stated as follows: (1) Actual annexation to the realty or to something appurtenant thereto; (2) Appropriateness to the use or purposes of that part of the realty with which it is connected; (3) The intention of the party making the annexation, of making permanent attachment to the freehold. This intention of making the annexation is inferred; (a.) From the nature of the articles annexed; (b.) The relation of the party making the annexation; (c.) The structure and mode of annexation; (d.) The purposes and uses for which the annexation has been made.

According to these rulings, we do not consider that the pump and boiler put upon the plantation of Mr. Scott lost their character as chattels; and therefore, we hold that the felonious taking and carrying away of said pump, or any

part thereof, was larceny. We recognize the fact that the intention of the person making the annexation is the controlling factor in determining the character of the article annexed. If the testimony of Mr. Scott had simply been that he "intended the said boiler and pump to be a permanent improvement on said plantation," without further qualification, and the said boiler had been made stationary, we are not prepared to say that it would not have been a fixture. If believed, the testimony "that said boiler and pump could be moved, and had been moved up and down the river so as to more conveniently pump water," takes away the immobility, which of necessity must be an element of the permanency of the improvement. It is not essential to a fixture that its annexation to the freehold be made absolutely permanent by means of foundations laid or dug, or through the fastenings of cement or iron. As was said by CLOPTON, J., in *Tillman v. DeLacy*, 80 Ala. 102: "The permanence of the attachment does not depend on the strength, or force, or manner of the annexation to the freehold, so much as upon its constancy, and upon the uses to which the attached chattel is adapted; the purposes for which designed, and the intention of the party in attaching it." There can be no such permanent annexation of the chattel to realty as will merge its character of personal property into realty, unless that annexation is intended to be stationary.

The boiler and engine involved in this case are no more fixtures than would be a threshing machine, which can be moved from one part of the plantation to another as necessity or convenience demands. Nor does the said engine and boiler possess more of the elements of a fixture than a gin; and it has been expressly held by this court that a gin is not a fixture.—*Gresham v. Taylor*, 51 Ala. 505; *Hancock v. Jordan*, 7 Ala. 448.

We entertain no doubt that the valves taken from the pipes of the Montgomery Furnace & Chemical Company were fixtures. They meet the requirements of the rules as laid down above, in every particular as being a part of the machinery for the accomplishment of those purposes. According to the testimony in this case, the pipes attached to this machinery are fixtures beyond all cavil, and the valves alleged to have been stolen, being necessary parts of such pipes, partake of the same character. A long line of decisions sustain this view.—*Commercial Fire Ins. Co. v. Allen*, 80 Ala. 571; *Tillman v. DeLacy*, 80 Ala. 102; *Quinby v. Manhattan Cloth & Paper Co.*, 24 N. J. Eq. 260; *Langdon*

*v. Buchanan,* 62 N. H. 657; *Gray v. Holdship,* 17 Serg. &
R. 413; Washb. on Real Prop. p. 22; 8 Amer. & Eng. Encyc.
of Law, p. 43.

The court erred in its charge to the jury, and in refusing
to give the second charge requested by the defendant.

The indictment in this case was for larceny. If the pros-
ecution had been under section 3875 of the Code of 1886,
different rules would probably prevail.

Reversed and remanded.