In the Matter of Michael R. KENNEDY, Debtor.

Michael R. KENNEDY, Plaintiff,

v.

LANE FOODS, INC., and Mr. John Lane, Individually and as President of Lane Foods, Inc., Defendants,

v.

GABBY'S INC. and Kevin Jones, Third Party Defendants.

Bankruptcy No. 94–40284.
Adv. No. 95–4010.

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

Jan. 31, 1996.

Wesley J. Boyer, Macon, Georgia, for Michael R. Kennedy.

Fife M. Whiteside, Columbus, Georgia, for Lane Foods, Inc. and John Lane.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Michael R. Kennedy, Plaintiff, filed on March 3, 1995, a Complaint for Turnover of Property. Lane Foods, Inc., Defendant, and John Lane, Defendant, filed answers and counterclaims on May 3, 1995. Plaintiff filed on May 9, 1995, responses to the counterclaims. Plaintiff's complaint and Defendants' counterclaims came on for trial on November 7, 1995. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.[1]

### FINDINGS OF FACT

Gabby's, Inc. was an Alabama corporation which was in the restaurant business. Gail G. ("Gabby") Jones was the president of Gabby's, Inc. Kevin Jones is the husband of Gail Jones. Mr. Jones was a manager for Gabby's, Inc. Mr. Jones opened and managed restaurants, negotiated leases, and helped construct new restaurants. The restaurants were known as Gabby's Diners.

Plaintiff is a dentist who resides in Columbus, Georgia. George Copeland is a commercial builder and "trusted friend" of Plaintiff. Plaintiff, Mr. Copeland, and Charles Rutland, Jr. intended to form a corporation to be known as Phenix City, M.G.C., Inc.[2] The corporation was never legally formed.

Mr. Copeland found a promising location for a restaurant in Phenix City, Alabama. Gabby's, Inc. decided to open a restaurant at that location.

---

1. Lane Foods, Inc. and John Lane filed on August 1, 1995, a third party complaint against Gabby's, Inc. and Kevin Jones. The third party complaint was not at issue in the trial held on November 7, 1995.

2. Plaintiff, Mr. Copeland, and Mr. Rutland used the initials of their first names for Phenix City, M.G.C., Inc.

Phenix City, M.G.C., Inc. and Mr. Jones entered into a Shopping Center Lease in August of 1989. Plaintiff and Mr. Rutland signed the lease on behalf of Phenix City, M.G.C., Inc. Mr. Copeland "attested" their signatures. Phenix City, M.G.C., Inc. was to be the landlord. Mr. Jones testified that he signed on behalf of Gabby's, Inc. The Court is persuaded that the true tenant was Gabby's, Inc. rather than Mr. Jones.

Under the terms of the lease, Phenix City, M.G.C., Inc., as the landlord, was to construct the building to house the Gabby's Diner. The terms of the lease provide that the building was to be owned by Phenix City, M.G.C., Inc. and that, in the event the lease terminated, the building was to remain with "the premises."

The term of the Shopping Center Lease was 120 months. The monthly rent for the first five years was $3,842.42. After the fifth year, monthly rent would decrease to $2,700.[3] Gabby's, Inc. was to pay "all taxes, assessments, and government charges of any kind and nature whatsoever...." Article XVIII. 18.2. The lease was not recorded for public record. Gabby's, Inc. could not assign or transfer the lease or sublet the premises without prior written consent. The lease was to be governed by Alabama law.

Articles I, III, and IX of the lease provide, in part:

ARTICLE I. Definitions and Certain Basic Provisions.

1.1 (a) "Landlord": PHENIX CITY, M.G.C. INC.

....

(c) "Tenant": KEVIN JONES

....

(e) Tenant's trade name: GABBY'S

....

(g) "Demised Premises": approximately 1200 square feet in Building ___ (computed from measurements to the exterior of outside walls of the building and to the center of interior walls), such premises being shown and outlined on the plan attached hereto as Exhibit "A," and being part of the Shopping Center situated upon the property described in Exhibit "B" attached hereto. "Shopping Center" shall refer to the property described in Exhibit "B," together with such additions and other changes as Landlord may from time to time designate as included within the Shopping Center.

....

(p) Permitted use: RESTAURANT

....

ARTICLE III. Construction and Acceptance of Demised Premises.

3.1 Landlord shall proceed to construct an improvement upon the Demised Premises in compliance with the "Description of Landlord's Work" in Exhibit "C" attached hereto, with such minor variations as Landlord may deem advisable, and tender the premises to Tenant.

....

ARTICLE IX. Alterations.

9.1 Tenant shall not make any alterations, additions, or improvements to the Demised Premises without the prior written consent of Landlord, except for the installation of unattached, movable trade fixtures which may be installed without drilling, cutting, or otherwise defacing the Demised Premises. All alterations, additions, improvements, and fixtures (other than unattached, movable trade fixtures) which may be made or installed by either party upon the Demised Premises shall remain upon and be surrendered with the Demised Premises and become the property of Landlord at the termination of this lease, unless Landlord requests their removal in which event Tenant shall remove the same and restore the Demised Premises to their original condition at Tenant's expense.

Neither Plaintiff nor Phenix City, M.G.C., Inc. owned the realty when the Shopping Center Lease was signed. On October 26, 1989, Plaintiff, as an individual, purchased from a third party the realty upon which the restaurant was to be constructed. Plaintiff, as an individual, continues to own the realty.

---

**3.** Phenix City, M.G.C., Inc. agreed to advance to Mr. Jones the sum of $50,000. The advance was to be repaid in monthly installments of $1,142.42, with a term of five years.

The purchase price for the realty was $100,000. Plaintiff financed the purchase by obtaining a purchase-money mortgage for $250,000 from Barnett Federal Savings Bank.[4] Plaintiff pledged as collateral the realty being purchased and his interest in a shopping center. As additional collateral, Plaintiff assigned to the bank the Shopping Center Lease, with Plaintiff retaining the right to collect all rents. Plaintiff also pledged as collateral the personalty, equipment, fixtures, and other property which were to be placed on the realty.

The proceeds of Plaintiff's loan were distributed as follows:

| | |
|---|---|
| $100,000 | Purchase price of realty |
| 50,000 | Advance to Mr. Jones |
| 28,000 | Site development expense |
| 17,000 | Commission to George Copeland |
| 17,000 | Commission to Charles Rutland, Jr. |
| 38,000 | Closing costs, other expenses, and unexplained disbursements |
| $250,000 | |

The restaurant building was constructed on Plaintiff's realty. The building is twenty feet by sixty feet. The building is constructed on a concrete slab which rests on a layer of dirt enclosed by concrete blocks. The building was designed so that it could be moved to another location. A house moving company would be needed to move the building. Mr. Copeland testified that he, Plaintiff, and Gabby's, Inc. understood that the building was movable. Mr. Copeland and Mr. Jones testified that Gabby's, Inc. was to own the building and the equipment. Mr. Copeland testified that the Shopping Center Lease was a ground lease. Plaintiff testified, however, that he was to own the building. Plaintiff also testified he was to own the equipment. It is clear that Plaintiff, Mr. Copeland, and Mr. Jones hotly dispute who was to own the building and equipment. The Court is persuaded that it should look to the written document, the Shopping Center Lease, to determine the intent of the parties and to answer the question of whether the building is part of the realty.

Gabby's Inc. operated the restaurant for several months before selling the restaurant to S & L Foods, Ltd. in August of 1990.

Gabby's, Inc. and S & L Foods, Ltd. entered into a Franchise Agreement dated August 14, 1990. S & L Foods, Ltd. was a Georgia corporation formed by Jim Sanders and John Lane to operate the restaurant. John Lane was the president of S & L Foods, Ltd.[5]

The Franchise Agreement provides, in part:

### SECTION THREE
### LOCATION

A. Franchisor [Gabby's, Inc.] has obtained a lease and constructed and equipped a Gabby's Diner located at 1709 280 By–Pass, Highway 280 By–Pass, Phenix City, Alabama.

B. Franchisor [Gabby's, Inc.] shall sublet, and by these premises, does sublet the above described realty and improvements to franchisee [S & L Foods, Ltd.] on the same terms and conditions as franchisor [Gabby's, Inc.] is obligated on the prime lease. Franchisee [S & L Goods, Ltd.] hereby accepts a sublease on said premises, and agrees to abide by all of the terms and conditions contained in said lease. A copy of said lease is attached to this instrument as Exhibit "A", and incorporated herein by reference the same as if fully [set forth] herein.

### SECTION FOUR

### PAYMENTS

A. Franchisee [S & L Foods, Ltd.] shall make payment to franchisor [Gabby's, Inc.] of $190,000.00, payable as follows: $50,000.00 on execution of this agreement, with the remaining $140,000.00 balance to be financed by separate interest for a term of ten (10) years at an annual percentage rate of interest of twelve percent (12%).

The Court notes that the Shopping Center Lease was incorporated into the Franchise Agreement. S & L Foods, Ltd. specifically obligated itself to abide by the terms of the Shopping Center Lease.

S & L Foods, Ltd. made the $50,000 down payment and financed the remaining $140,-

---

4. Plaintiff later obtained a $25,000 line of credit from Barnett Federal Savings Bank.

5. S & L Foods, Ltd. was dissolved in 1992.

000. John Lane, as president of S & L Foods, Ltd., signed a promissory note dated August 14, 1990, in favor of Gabby's, Inc. S & L Foods, Ltd. agreed to pay $140,000 by making monthly payments of $2,008.59 for 120 months. S & L Foods, Ltd. pledged, as collateral, the furnishings, fixtures, equipment, inventory, supplies, and the restaurant.

S & L Foods, Ltd. took possession of the restaurant in August of 1990. Plaintiff did not know that S & L Foods, Ltd. was now operating the restaurant. The restaurant was managed by Ed Lane, who is the brother of John Lane. S & L Foods, Ltd. made monthly payments to Gabby's, Inc., which, in turn, made rent payments to Plaintiff. Gail Jones delivered the rent payments to Plaintiff.

Gabby's, Inc. later agreed to accept $100,000 as payment in full of S & L Foods, Ltd.'s remaining $140,000 obligation. This satisfied S & L Food, Ltd.'s financial obligation to Gabby's, Inc. Gabby's, Inc. and S & L Foods, Ltd. entered into an Addendum To Franchise Agreement dated August 2, 1991. The addendum provides, in part:

3. Gabby's, Inc., does by these presents release S & L Foods, Ltd., from the security interest granted in the promissory note dated August 14, 1990, on the building, furnishings, fixtures, equipment, inventory and supplies located at 1709 Highway 280 By-pass, Phenix City, Alabama, as such security interest is applied to the debt created by said promissory note. It is understood that said release does not affect Franchisee's [S & L Foods, Ltd.] obligations under the August 14, 1990, Franchise Agreement, as amended by this instrument.

4. Franchisor [Gabby's, Inc.] warrants that the above referenced building and furnishings and fixtures supplied by it are free and clear and agrees to hold harmless franchisee [S & L Foods, Ltd.] from any conflicting claims thereon.

In August of 1991, John Lane and Kelvin Lane formed a Georgia corporation known as Lane Foods, Inc.[6] The property and assets of S & L Foods, Ltd. were transferred to Lane Foods, Inc. which took over operation of the restaurant. S & L Foods, Ltd. was dissolved in 1992.

In November of 1993, Lane Foods, Inc. started paying rent directly to Plaintiff. The payments were made on the checking account of Lane Foods, Inc. No payments were made on John Lane's individual checking account. Plaintiff did not know that Lane Foods, Inc. was operating the restaurant until November of 1993. Lane Foods, Inc. paid rent to Plaintiff for the months of November 1993 through September of 1994. Plaintiff never entered into a written lease with John Lane, Lane Foods, Inc., or S & L Foods, Ltd. Plaintiff believed that John Lane, as an individual, was the tenant. The Court is persuaded, however, that Lane Foods, Inc. was the true tenant.

John Lane first learned that Plaintiff asserted an ownership interest in the building and equipment during the summer of 1994. In September of 1994, Plaintiff told John Lane that the restaurant was operating without a lease and threatened to evict Lane Foods, Inc. John Lane testified that Lane Foods, Inc. stopped paying rent in order to force Plaintiff to talk about the situation. John Lane testified that the initial five-year term of the Shopping Center Lease was almost up and that the rent was scheduled to decrease to $2,700 per month. Plaintiff, however, had never agreed for Lane Foods, Inc. to assume the Shopping Center Lease.

Lane Foods, Inc. ceased operating the restaurant in May of 1995. John Lane gave Plaintiff the key to the restaurant in June of 1995. Plaintiff paid the property tax for 1995 in the amount of $1,473.82. The tax notice shows that the taxes were due on October 1, 1995.

From the evidence presented, the Court is persuaded that the fair market rent on the restaurant is $2,700 per month. Lane Foods, Ltd. operated the restaurant for nine months without paying rent.[7]

---

6. Lane Foods, Inc. was incorporated on August 12, 1991.

7. Lane Foods, Inc. did not pay any rent after September of 1994. John Lane gave Plaintiff the key to the restaurant in June of 1995.

The City of Phenix City, Alabama, issued business licenses for the restaurant for 1991 and 1992 in the name of S & L Foods, Ltd. and Ed Lane. The 1993 business license was issued in the name of Lane Foods, Inc. The 1994 and 1995 business licenses were issued in the name of Lane Foods, Inc. and Ed Lane. Lane Foods, Inc. filed federal income tax returns for 1991, 1992, and 1993.

Plaintiff filed a petition under Chapter 11 of the Bankruptcy Code on March 14, 1994. Plaintiff continues to own the realty.

### CONCLUSIONS OF LAW

The Court must first determine whether Plaintiff or Lane Foods, Inc. owns the Gabby's restaurant building. It is undisputed that Plaintiff owns the realty. Plaintiff contends the building is a part of the realty upon which the building sits. Lane Foods, Inc. contends that the building is personal property.

■ In determining whether the building is real or personal property, the Court must look to applicable state law, which, in this case, is Alabama law. *In re Morphis*, 30 B.R. 589, 591 (Bankr.N.D.Ala.1983); *see also Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law").

"*Langston v. State* ... set out the criteria for determining whether an item is to become part and parcel of the real estate to which it is attached...." *Tin Man Roofing Co. v. Birmingham Board of Education*, 536 So.2d 1383, 1385 (Ala.1988).

■ In *Langston v. State*,[8] the Alabama Supreme Court stated:

The question presented for our consideration is whether the articles.... had, on account of their annexation to the freehold, lost their character as personal property, and become a part of the realty.... The subject of fixtures is one of great difficulty, and has evoked much discussion and a great contrariety of opinion. When doubt arises as to whether or not a certain piece of property is a fixture, this doubt must be decided by the circumstances of each individual case, as they may be influenced by certain cardinal rules which have now become criteria for the decision of the question. If the article in question meets the requirements of these rules, its character as a fixture is determined. These rules, as gathered from the adjudicated cases, have been succinctly stated as follows: (1) Actual annexation to the realty or to something appurtenant thereto; (2) appropriateness to the use of purposes of that part of the realty with which it is connected; (3) the intention of the party making the annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred (a) from the nature of the article annexed; (b) the relation of the party making the annexation; (c) the structure and mode of annexation; (d) the purposes and uses for which the annexation has been made.... We recognize the fact that the intention of the person making the annexation is the controlling factor in determining the character of the article annexed. If the testimony of Mr. Scott had simply been that he "intended the said boiler and pump to be a permanent improvement on said plantation," without further qualification, and the said boiler had been made stationary, we are not prepared to say that it would not have been a fixture. If believed, the testimony "that said boiler and pump could be moved, and had been moved up and down the river so as to more conveniently pump water," takes away the immobility, which of necessity must be an element of the permanency of the improvement. It is not essential to a fixture that its annexation to the freehold be made absolutely permanent by means of foundations laid or dug, or through the fastenings of cement or iron. As we said by CLOPTON, J., in *Tillman v. De Lacy*, 80 Ala. 103: "The permanence of the attachment does not depend on the strength or force or manner of the annexation to the freehold, so much as upon its constancy, and upon the uses to which the attachment chattel is adapted, the purposes for which designed, and the intention of the party in

---

**8.** 96 Ala. 44, 11 So. 334 (1892).

attaching it." There can be no such permanent annexation of the chattel to realty as will merge its character of personal property into realty, unless that annexation is intended to be stationary.

11 So. at 335–36.

### 1. Actual Annexation

■ The restaurant building is the size of a small house. The building, without doubt, is quite heavy. Although it could be moved, it is not "readily" movable. A house moving company would be needed to move the building. The building has never been moved. The building could not be operated as a restaurant while being moved.

### 2. Appropriateness to Purpose of Realty

Clearly, the restaurant building is an appropriate business use in a shopping center. Without the building, the realty would simply be a vacant lot.

### 3. Intention to Make a Permanent Attachment

Intention is to be inferred from the nature of the article annexed, the relation of the party making the annexation, the structure and mode of annexation, and the purposes and uses for which the annexation has been made. The intention of the party making the annexation is the controlling factor in determining the character of the article annexed. *Langston v. State*, 11 So. at 335–36.

■ "Intent to affix property to the realty may be express or implied; but where a building or other structure has been voluntarily erected, such intent is presumed." *Milford v. Tennessee River Pulp and Paper Co.*, 355 So.2d 687, 690 (Ala.1978).

The Shopping Center Lease dated August 4, 1989, provides that the landlord was to construct and own the restaurant building. The building was to remain on "the premises" in the event the lease terminated. Kevin Jones signed the lease on behalf of the tenant, Gabby's, Inc. The lease was incorporated into the Franchise Agreement which was executed by Gabby's, Inc. and S & L Foods, Ltd. The Court is persuaded that Lane Foods, Inc., successor to S & L Foods, Ltd., is bound by the Shopping Center Lease. The building is a large, heavy building. A house moving company would be needed to move the building. Without the building, there would be no restaurant business.

The Court, having considered the evidence presented and the criteria set forth in *Langston v. State*, is persuaded that the restaurant building is part of the realty upon which the building sits. The Court is persuaded that Plaintiff owns the restaurant building.

Lane Foods, Inc. operated the restaurant for nine months without paying rent. The fair market rent on the restaurant is $2,700 per month. The Court is persuaded that Lane Foods, Inc. owes Plaintiff the sum of $24,300 for unpaid rent. The Court is persuaded that John Lane has no personal liability for the unpaid rent.

Under the Shopping Center Lease, Gabby's, Inc. was to pay all property taxes. The 1995 property taxes in the amount of $1,473.82 were paid by Plaintiff. Plaintiff, however, admits that he never agreed that Lane Foods, Inc. could assume the Shopping Center Lease. The Court is persuaded that neither Lane Foods, Inc. nor John Lane is responsible for any portion of the 1995 property taxes.

Finally, the Court must determine whether Plaintiff or Lane Foods, Inc. owns the equipment in the restaurant. The equipment was used in the operation of the restaurant.

■ "Generally, where the owner of the realty permits persons with no interests in the realty to attach articles onto the realty, as in this case, the right of the person annexing the articles to remove them is implied. A license, tenant, or tenant-at-will may remove fixtures attached for the purpose of carrying on his trade or business." *MOCO, Inc. v. Gaines*, 484 So.2d 470, 474 (Ala.Civ.App.1985).

The Court also notes Article IX of the Shopping Center Lease, which states that the tenant may remove all unattached, movable trade fixtures. The Court is persuaded that the pieces of equipment in the restaurant are trade fixtures which are not part of

the realty and therefore are the property of Lane Foods, Inc.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that Michael R. Kennedy, Plaintiff, is the owner of the restaurant building located at 1709 Highway 280 By–Pass, Phenix City, Alabama; and it is further

ORDERED that Lane Foods, Inc. is indebted to Plaintiff in the sum of $24,300 for unpaid rent; and it is further

ORDERED that John Lane has no personal liability for the unpaid rent; and it is further

ORDERED that neither Lane Foods, Inc. nor John Lane is liable for any portion of the 1995 property taxes; and it is further

ORDERED that Lane Foods, Inc. owns the equipment in the restaurant building located at 1709 Highway 280 By–Pass, Phenix City, Alabama.

SO ORDERED.