42 So.3d 90 (2010)
SYCAMORE MANAGEMENT GROUP, LLC, and DirecPath, LLC
v.
COOSA CABLE COMPANY, INC.
1080667.
Supreme Court of Alabama.
January 22, 2010.
*91 Riley Roby and Neah Mitchell of Balch & Bingham LLP, Montgomery; and Eric Langley and Ed Haden of Balch & Bingham LLP, Birmingham, for appellants.
Henry I. Frohsin, James F. Barger, Jr., and J. Elliott Walthall of Frohsin & Barger LLC, Birmingham, for appellee.
BOLIN, Justice.
Sycamore Management Group, LLC ("Sycamore"), and DirecPath, LLC ("DirecPath"), appeal from the trial court's order granting permanent injunctive relief to Coosa Cable Company, Inc. ("Coosa Cable"). We reverse and remand.

I. Facts and Procedural History
Coosa Cable is an Alabama corporation that holds a franchise to provide telecommunication services to Pell City residents, including cable television, Internet services, and Internet telephone serviceincluding emergency 911. DirecPath is a private cable operator based in Atlanta, *92 Georgia, that provides satellite video programming, Internet services, and digital telephone service to its subscribers. Sycamore is an Alabama limited liability company that owns and manages several apartment complexes or multi-dwelling units, including Maple Village, which is located in Pell City.
Maple Village was constructed in 2004; EYC Companies ("EYC") owned the property and managed the apartment complex after the construction was completed. During the construction phase, Coosa Cable installed, at its own expense, a full cable-distribution plant at the Maple Village complex, including wiring and other equipment. Coosa Cable and EYC never entered into a contract for the provision of cable service to residents of Maple Village, nor did Coosa Cable pay EYC a fee for the privilege of serving the residents of Maple Village. The residents of Maple Village had the option to contract on a month-to-month basis with Coosa Cable for individualized service plans, including cable television, Internet services, and primary telephone serviceincluding 911 service. Coosa Cable dealt directly with its customers at Maple Village; i.e., it billed the customers individually. Coosa Cable's arrangement with the residents at Maple Village was nonexclusive in that the residents there were free to contract with other cable and/or communications providers.
Sycamore acquired Maple Village from EYC in March 2007. On August 12, 2008, Sycamore entered into a written agreement with DirecPath whereby DirecPath would have the exclusive right to provide video-programming services (and a nonexclusive right to provide Internet and telephone services) to the residents of Maple Village. Debbie Taylor, the owner/manager of Sycamore, testified that Sycamore would receive approximately $700 to $1,100 per month under the agreement. Both Sycamore and DirecPath were aware of Coosa Cable's business relationships with many of the Maple Village residents. At the time, Coosa Cable was providing its services to approximately 100 customers at Maple Village. In a letter dated November 10, 2008, DirecPath informed each of Coosa Cable's customers at Maple Village that, as of December 10, 2008, "Coosa Cable [would] no longer service cable television for [them]." It is undisputed that DirecPath intended to eliminate Coosa Cable's service to Maple Village and to use Coosa Cable's wires to run DirecPath's signal to Coosa Cable's former customers.
After Coosa Cable was made aware of the letter, it sued both Sycamore and DirecPath, alleging tortious interference with business and contractual relations and seeking injunctive relief to prevent further damage from such interference. Specifically, Coosa Cable pleaded that if DirecPath and Sycamore were permitted to proceed with their plans, Coosa Cable's goodwill and its relationships with its current and future customers would be irreparably harmed. The trial court entered a temporary restraining order and subsequently entered a preliminary injunction, pending a full hearing on the merits.
On February 24, 2009, following a hearing, the trial court entered a final judgment, granting Coosa Cable's request for permanent injunctive relief based on Sycamore's and DirecPath's tortious interference with Coosa Cable's relations with its customers at Maple Village. Specifically, the trial court ordered that Sycamore and DirecPath were enjoined from (1) "[m]aking any false or misleading statements to Coosa Cable's customers or in any way interfering with its customer relationships"; (2) "[p]reventing or interfering with Coosa Cable's access to its equipment"; and (3) "[i]nterfering with or misappropriating *93 Coosa Cable's personal property in the form of its distribution plant, wiring, and equipment." Sycamore and DirecPath appealed.

II. Standard of Review
"To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest."
TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999), overruled on another point of law, Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala.2008). The entry of a permanent injunction is reviewed de novo, TFT, Inc., 751 So.2d at 1241; however, this Court has recognized that a "a trial court's consideration of ore tenus testimony has a bearing upon the standard of review we apply to the entry of a permanent injunction." Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692, 701 (Ala.2008). See also Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683 (Ala.2009)(according a presumption of correctness to portions of the trial court's decision based on representations of counsel regarding a settlement agreement where a permanent injunction was issued).

III. Discussion
Sycamore and DirecPath argue that the trial court erred in entering a permanent injunction preventing them from "[i]nterfering with or misappropriating Coosa Cable's personal property" because, they say, the real property belongs to Sycamore and the personal property at issue belonging to Coosa Cable (the wiring and related equipment) consists of fixtures attached to the real property. They argue that Coosa Cable did not have a statutory or contractual right to remain on Sycamore's property nor did Coosa Cable have an easement to permit it to remain on Sycamore's property. Sycamore and DirecPath cite Bell-South Mobility v. Cellulink, Inc., 814 So.2d 203 (Ala.2001), for the proposition that in order to establish a claim of tortious interference with business relations, a plaintiff must establish that the defendant is a "stranger" to the business relations. Sycamore and DirecPath argue that Coosa Cable lacked any right to remain on Sycamore's property because Sycamore was not a "stranger" to Coosa Cable's relationships with the tenants of Maple Villageeach tenant had a lease agreement with Sycamore and Coosa Cable relied on Sycamore for access to the individual apartment units. Also, they argue that Sycamore has the right to exclude third parties from its property. Last, Sycamore and DirecPath argue that Coosa Cable had an adequate remedy at law in the form of money damages and that injunctive relief disserves the public interest by prohibiting the performance of a lawful contract between Sycamore and Direc-Path.
A fixture is "an article which was once a chattel, but which, by being physically annexed or affixed to the realty, has become an accessory to it and part and parcel of it." Farmers & Merchants Bank v. Sawyer, 26 Ala.App. 520, 522, 163 So. 657, 658 (1935). In order to determine whether an item has become a fixture to real property, there must be:
"`"(1) Actual annexation to the realty or to something appurtenant thereto; (2) Appropriateness to the use or purpose of that part of the realty with which it is connected; (3) The intention of the party making the annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred: (a) From the *94 nature of the articles annexed; (b) The relation of the party making the annexation; (c) The structure and mode of annexation; (d) The purposes and uses for which the annexation has been made."'"
Sharp v. Sharp, 540 So.2d 1373, 1375 (Ala. 1989) (quoting Milford v. Tennessee River Pulp & Paper Co., 355 So.2d 687, 690 (Ala.1978), quoting in turn Langston v. State, 96 Ala. 44, 46, 11 So. 334, 335 (1891)).
Coosa Cable argues that the cable wiring and related equipment are "trade" fixtures and are, therefore, the personal property of Coosa Cable. In LaFarge Building Materials, Inc. v. Stribling, 880 So.2d 415, 423 (Ala.2003) (quoting Colonial Pipeline Co. v. State Department of Assessments & Taxation, 371 Md. 16, 34-35, 806 A.2d 648, 659 (2002)), this Court elaborated regarding the trade-fixtures exception to the general rule of fixtures:
"`The trade fixtures exception to the common law rule of fixtures dates back almost as far as the common law rule itself. Van Ness v. Pacard, 27 U.S. 137, 143-44, 2 Pet. 137, 7 L.Ed. 374, 376-77 (1829). In 1802, this Court held in Kirwan [v. Latour, 1 H. & J. 289 (1802) ] that "where a tenant puts up anything for the purpose of carrying on his trade, he may remove it." 1 H. & J. at 291. A trade fixture commonly is defined as an item affixed to realty for the purpose of enabling the tenant to perform properly a trade or profession, which can be removed without material or permanent injury to the realty. [Richard R. Powell, Powell on Real Property] § 57-45 [(1969) ]. The touchstone for the trade fixtures test, like the Dudley [v. Hurst, 67 Md. 44, 48, 8 A. 901, 902 (1887)] fixtures analysis, is intent: "[t]he sole question is, whether it is designed for purposes of trade or not." Van Ness, 27 U.S. at 146, 7 L.Ed, at 378. See also Dudley, 67 Md. at 48, 8 A. at 902 (stating that of the prongs of the fixtures test, "the most important is the question of intention"). When the proper intent is found, "[n]o matter how strongly [the fixtures are] attached to the soil or imbedded in it, they are treated as personal property, and as such subject to removal by the person erecting them." N. Cent. Ry. Co. v. The Canton Co., 30 Md. 347, 352 (1869).'"
In other words, a trade fixture is an article annexed to realty by a tenant for purposes of carrying on the tenant's trade or business.
In the instant case, we agree with Sycamore and DirecPath that the wires and equipment were fixtures attached to real property but not trade fixtures. Coosa Cable has been providing cable services to residents in Pell City for 30 years. Coosa Cable installed at its own expense the distribution plant, wiring, and equipment at Maple Village in order to provide video and data services to the residents. Coosa Cable's lines and equipment were installed inside the walls of the apartment complex during construction. The wiring became an integral part of the premises and provided a means for the residents to receive video services. Jeff Smith, president of Coosa Cable, testified at trial that, when Coosa Cable installed the wiring at Maple Village, he never intended to remove it because it would be a huge undertaking to remove the wiring at Maple Village without tearing out the ceiling and walls in each apartment unit, i.e., without material injury to the property. Coosa Cable's argument that the wires and equipment are "trade" fixtures does not apply in this fact situation because Coosa Cable does not have a landlord-tenant relationship with Sycamore, nor did it have *95 such a relationship with Sycamore's predecessor, EYC.
Coosa Cable cites Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546 (4th Cir.1994), in support of its position that it is entitled to an injunction preventing DirecPath from serving Coosa Cable's customers at Maple Village. In Multi-Channel, Adelphia, a cable-television provider, sought a preliminary injunction enjoining a competing cable provider and the owners of residential apartment complexes from operating under cable-provider agreements that excluded Adelphia, which the trial court granted. Multi-Channel, however, is distinguishable because it involved a preliminary injunction. Furthermore, Multi-Channel involved a Virginia statute that "proscribed payments by cable providers to landlords `in exchange for giving tenants... access to [cable] services.' Va.Code § 55-248.13:2." 22 F.3d at 553 n. 5. Alabama has no such statute.
Sycamore and DirecPath argue that Coosa Cable has neither a statutory or contractual right to remain on Sycamore's property nor an easement to allow it to remain on Sycamore's property. Coosa Cable operates under an ordinance adopted by Pell City (Ordinance No. 87-793), which allows Coosa Cable the right to use the city's rights-of-way for its cable equipment, but the ordinance does not grant Coosa Cable the right to occupy private property. It is undisputed that Coosa Cable did not have a contract with EYC or Sycamore to provide cable services to tenants at Maple Village. Jeff Smith testified that Coosa Cable never had an easement to be on the Maple Village property.[1]
Based on the foregoing, there was evidence presented that the wires and related equipment were fixtures to the real property and that they therefore belonged to the owner of the real property, Sycamore, and, as the property owner, Sycamore had the right to enter into its contract with DirecPath to provide cable services to the tenants at Maple Village.

Conclusion
Sycamore, by virtue of its ownership of Maple Village and the existing chattel and fixtures, had the ability to contract with DirecPath so long as that contract did not interfere with an existing right. Coosa Cable had no existing right by contract, by statute, or by easement to provide cable service to the residents of Maple Village, and, therefore, Sycamore and DirecPath could not be enjoined from using Sycamore's property. Because Coosa Cable is not entitled to injunctive relief, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Justice (concurring in the result).
None of the contracts Coosa Cable Company, Inc., had with its customers at Maple Village extended beyond the date of initiation of service to those customers by DirecPath, LLC. Under the facts presented here, I concur in the result.
*96 I also write separately to address the appellate standard of review of judgments granting or denying permanent injunctive relief.
In stating that "[t]he entry of a permanent injunction is reviewed de novo," the main opinion repeats a statement made in some previous cases by this Court. 42 So.3d at 93 (citing TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999)). I remain unable to see how this Court can continue to articulate this singular standard of appellate review for permanent injunctions in light of the fact that many such injunctions depend upon factual findings made by a trial court based upon ore tenus evidence. See Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683, 695 (Ala.2009) (Murdock, J., concurring in the rationale in part and concurring in the result); City of Dothan v. Eighty-Four West, Inc., 871 So.2d 54, 60 (Ala.Civ.App. 2003) (Murdock, J., concurring specially on application for rehearing) (tracing the source of the de novo rule in permanent-injunction cases to a case in which ore tenus evidence was not material to the trial court's judgment and noting other cases affording deference to the trial court's judgment granting or denying permanent injunctive relief where evidence was presented ore tenus (cited with approval in Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala.2008), which disavowed the articulation of a uniform rule of de novo review, albeit in a case involving a preliminary injunction)). The main opinion is correct in its subsequent observation that "`a trial court's consideration of ore tenus testimony has a bearing upon the standard of review we apply to the entry of a permanent injunction.'" 42 So.3d at 93 (quoting Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692, 701 (Ala. 2008)). Consequently, it is inaccurate to state in the first instance that "a permanent injunction is reviewed de novo." Some are; some are not.
NOTES
[1] Coosa Cable does not argue that permission from EYC to install the wires and equipment had vested Coosa Cable with an irrevocable license. Multi-Channel, 22 F.3d 546, is also distinguishable on this ground because Adelphia had alleged that it had an easement or an irrevocable license.