LYONS, Justice.
Holiday Isle, LLC, a developer of condominiums, appeals from a preliminary injunction entered by the Mobile Circuit Court preventing Holiday Isle from negotiating irrevocable letters of credit issued on behalf of J & R Investments, LLC, and Beth Adkins. See Rule 4(a)(1), Aia. R.App. P. Because the trial court exceeded its discretion in entering the injunction, we reverse and remand with instructions to dissolve the injunction.
I. Facts and Procedural History
On March 4, 2005, J & R Investments, LLC, agreed to purchase unit 105 and on March 7, 2005, Beth Adkins, David Adkins, and Nancy Whitten agreed to purchase unit 104 in a condominium complex being developed by Holiday Isle. J & R Investments, on the one hand, and Beth Adkins, David Adkins, and Nancy Whitten, on the other (hereinafter J & R Investments and the individual purchasers are referred to collectively as “the purchasers”), then en *1175 tered into preconstruction purchase and escrow agreements with Holiday Isle for the condominium units, which were to be completed within two years of April 1, 2005. The purchase agreements provided that the earnest-money deposit could be satisfied by letters of credit issued to Holiday Isle in lieu of cash. The purchasers selected this option; J & R Investments delivered a letter of credit to Holiday Isle, and Beth Adkins, David Adkins, and Nancy Whitten delivered a letter of credit to Holiday Isle. The purchase agreements provided that upon default by the purchasers, Holiday Isle and/or an escrow agent “shall draw on the existing Letter of Credit in whole and create with the proceeds thereof a cash Deposit to be placed with Escrow Agent, with said funds to be delivered to [Holiday Isle] as liquidated damages.”
On March 28, 2007, the Town of Dauphin Island issued the certificate of occupancy for the condominiums. On April 2, 2007, the purchasers conducted a pre-clos-ing inspection of their respective condominium units. Within the following week the purchasers informed Holiday Isle that they would not close on their condominium units because, they said, Holiday Isle had not completed the condominiums by April 1, 2007, as required by the purchase agreements. The purchasers also requested that their letters of credit be returned to them. In response, Holiday Isle contended that it had met its obligations under the purchase agreements, and it set the closing date for the purchasers’ condominium units for April 30, 2007.
On April 27, 2007, Beth Adkins and J & R Investments requested that the Mobile Circuit Court issue a temporary restraining order (“TRO”) preventing Holiday Isle from drawing on the letters of credit. Contemporaneously with the filing of the application for the TRO, Beth Adkins, David Adkins, Nancy Whitten, and J & R Investments also sought a judgment declaring their rights under the purchase agreements, rescission of the purchase agreements, and an injunction preventing Holiday Isle from drawing on the letters of credit. On June 8, 2007, Holiday Isle moved to compel arbitration and dismiss or stay the proceedings. After a hearing on the motion on June 27, 2007, the trial court ordered the case to arbitration on July 30, 2007.
On October 11, 2007, Holiday Isle objected to the request for a TRO and an injunction by Beth Adkins and J & R Investments. Holiday Isle argued that the trial court lacked jurisdiction to enter an injunction against it because, it said, the arbitrator now had jurisdiction over all the disputes in the case. In the alternative, Holiday Isle argued that the purchasers could not satisfy the requirements for obtaining a TRO or an injunction. The purchasers replied that the trial court retained jurisdiction to enter an injunction and that the requirements for obtaining injunctive relief had been satisfied.
On October 18, 2007, the trial court appointed an arbitrator to resolve all the disputes between the parties and issued a preliminary injunction to prevent Holiday Isle from negotiating the letters of credit. The trial court’s order states that “[because the Letters of Credit are inextricably intertwined with the arbitration issues, the Court hereby ENJOINS the negotiation of the Letters of Credit by whoever is holding them, until this matter is resolved by the arbitrator.” (Capitalization in original.) Holiday Isle appealed the trial court’s entry of the preliminary injunction to this Court.
II. Standard of Review
We have often stated: “The decision to grant or to deny a preliminary injunction is within the trial court’s sound discretion. *1176 In reviewing an order granting a preliminary injunction, the Court determines whether the trial court exceeded that discretion.” SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So.2d 706, 709 (Ala.2005).
A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
“‘(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].’ ”
Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala.2003)(quoting Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994)).
To the extent that the trial court’s issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review an injunction solely to determine whether the trial court exceeded its discretion should not apply. We find the rule applied by the United State Supreme Court in similar situations to be persuasive: “We review the District Court’s legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion.” Gonzales v. O Centro Espinta Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006); see also Justice Murdock’s special writing while sitting as a judge on the Court of Civil Appeals in City of Dothan v. Eighty-Four West, Inc., 871 So.2d 54, 60 (Ala.Civ.App.2003) (Murdock, J., concurring specially on application for rehearing) (cited with approval in McGlathery v. Richardson, 944 So.2d 968, 970 (Ala.Civ.App.2006)). To the extent they conflict with our holding today, previous expressions such as the one found in TFT, Inc. v. Warning Systems, Inc., 751 So.2d 1238, 1241-42 (Ala.1999) (“The applicable standard of review [of injunctive relief] depends on whether the trial court entered a preliminary injunction or a permanent injunction. A preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo.”) are hereby overruled.[1]
III. Analysis
A. Jurisdiction
We must first determine whether the trial court had jurisdiction to issue the preliminary injunction after it ordered the dispute to arbitration. Holiday Isle contends that the trial court retained only limited jurisdiction once it compelled arbitration because, it says, the arbitration clause, which is identical in all the purchase agreements, does not reseiwe to the trial court any jurisdiction for temporary or preliminary equitable relief. Holiday Isle relies on the decision of the United States Court of Appeals for the Eighth Circuit in Manion v. Nagin, 255 F.3d 535, 538-39 (8th Cir.2001), holding that “[i]n a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is ‘qualifying contractual language’ which permits it.” Because, Holiday Isle asserts, the purchase agreements do not contain “qualifying contractual language” permitting the trial court to grant injunctive relief, the purchase agree *1177 ments provide no grounds for the trial court to issue the preliminary injunction.
The purchasers respond by arguing that because, when the trial court entered the preliminary injunction, the case was not under the jurisdiction of any arbitration association and an arbitrator had not been selected, “[t]he trial court, in essence, was the only forum by which these matters could be resolved.” Purchasers’ brief at p. 23. The purchase agreements expressly provide that any arbitration proceedings shall not be conducted through the American Arbitration Association (“AAA”). However, the purchasers note that the purchase agreements also provide that disputes are to be submitted to arbitration under the Commercial Rules of the AAA or as the parties may later agree in writing. The purchasers further note that the Commercial Arbitration Rules of the AAA allow a party to seek interim measures from a judicial authority. Rule R-34(c) of the AAA’s Commercial Rules provides: “A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.” Nothing before us indicates that the parties, by agreement entered into after the purchase agreements, displaced the choice of the AAA’s Commercial Rules set forth in the purchase agreements.
The purchasers also note that in Drago v. Holiday Isle, L.L.C., 537 F.Supp.2d 1219 (S.D.Ala.2007), Holiday Isle also relied upon Nagin to argue that the federal district court lacked jurisdiction to issue an injunction because the case had been stayed pending arbitration. The court in Drago found that Nagin reflected a minority view and noted that the “majority of federal courts ... have concluded that in limited situations a binding arbitration clause does not bar a plaintiff from seeking emergency injunctive relief or other provisional remedies in court.” 537 F.Supp.2d at 1221. The court in Drago specifically adopted the reasoning of the Fourth Circuit Court of Appeals in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1052 (4th Cir.1985), as a basis for concluding that it may order equitable relief “where an arbitral award could not return the parties substantially to the status quo.” 537 F.Supp.2d at 1222. Here, if the trial court’s preliminary injunction was appropriately issued, it could be said that an arbitral award would not return the parties to the status quo where the proceeds of the letters of credit had previously been disbursed to the beneficiary.
We therefore apply the Commercial Rules of the AAA pursuant to the express terms of the purchase agreements and conclude that the trial court had jurisdiction to enter a preliminary injunction to order equitable relief to preserve the status quo. Whether the trial court erred in entering that injunction under the facts of this case is a separate issue.
B. Merits
A letter of credit exists independently of the underlying contract between a buyer and seller. See Benetton Servs. Corp. v. Benedot, Inc., 551 So.2d 295, 299 (Ala.1989); Southern Energy Homes, Inc. v. AmSouth Bank of Alabama, 709 So.2d 1180, 1185 (Ala.1998). “A letter of credit is a financing engagement by an issuing bank, made at the request of an applicant (or customer), to honor demands for payment by the beneficiary of the credit, provided the terms and conditions of the letter of credit are met.” Southern Energy Homes, Inc., 709 So.2d at 1184 (citing § 7-5-103(1)(a), Ala.Code 1975 (definition for “letter of credit” now found at § 7-5-102(a)(10))). “The beneficiary of the standby credit reasonably expects to re *1178 ceive payment from the issuer promptly upon demand and before any litigation between the applicant and the beneficiary may occur.” 709 So.2d at 1184 (citing John Dolan, The Law of Letter of Credit: Commercial and Standby Credits ¶¶ 3.06 & 3.07 (rev. ed.1996)). Thus, parties choose a letter of credit over other types of financing “so that they may have the benefit of prompt payment before any litigation occurs.” 709 So.2d at 1185 (emphasis added).
Holiday Isle contends that the trial court erred in enjoining it from negotiating the letters of credit because, it says, Alabama law is well settled that the unique nature of letters of credit and their role in the financial community makes enjoining a letter of credit inappropriate. Holiday Isle asserts that this Court has reversed every injunction issued by a trial court preventing a beneficiary from drawing on a letter of credit. See SouthTrust Bank of Alabama, N.A., 931 So.2d at 709, Textron Fin. Corp. v. Hayes, 619 So.2d 1363 (Ala.1993), Benetton Seros. Corp., 551 So.2d at 299. Holiday Isle also notes that in Southern Energy Homes, Inc., 709 So.2d at 1185-86, this Court held:
“We recognize that, as a general rule, letters of credit cannot exist without independence from the underlying transaction. [John Dolan, The Law of Letter of Credit: Commercial and Standby Credits ] at ¶ 2.09[5] [ (rev. e.1996) ]. Thus, when courts begin ‘delving into the underlying contract, they are impeding the swift completion of the credit transaction.’ Id. ‘The certainty of payment is the most important aspect of a letter of credit transaction, and this certainly encourages hesitant parties to enter into transactions, by providing them with a secure source of credit.’ Am-South v. Martin, 559 So.2d [1058] at 1062 [ (Ala.1990) ].”
In Southern Energy Homes, Inc., this Court went on to note that in a letter-of-credit transaction the parties “bargain for the advantages and disadvantages of the credit” and held that the trial court did not exceed its discretion by denying the applicant’s motion for a preliminary injunction preventing the issuer from paying the letter of credit. 709 So.2d at 1187-88.
The purchasers argue that the fact that the present case deals with the purchase of condominium units, which is governed by the Alabama Uniform Condominium Act, § 35-8A-101 et seq., Ala.Code 1975 (“the AUCA”), distinguishes it from this Court’s precedent holding that it is inappropriate to enjoin the negotiation of letters of credit. The purchasers note that the letters of credit satisfied the earnest-money deposit on the purchase of the condominium units and note that § 35-8A-410, Ala.Code 1975, titled “Escrow of deposits,” provides that a deposit for the purchase of a condominium unit is held by an escrow agent until “(i) delivered to the declarant at closing; (ii) delivered to the declarant because of purchaser’s default under a contract to purchase the unit; or (iii) refunded to the purchaser.” The purchasers further contend that an escrow account established under the AUCA, and the rights created by it, differ from a letter-of-credit situation in which there is a simple contractual agreement that the letter of credit will be paid upon demand. The purchasers contend that under the AUCA the letter of credit is deposited into an escrow account that is similar to a trust fund and can be drawn upon only if the developer of the condominium has shown that the buyer has defaulted. Thus, the purchasers assert that their letters of credit do not exist independently of the underlying transaction to purchase the condominiums and note that the Alabama Commentary to § 35-8A-410 states:
*1179 “The act provides that the account holder shall deliver these funds to the developer only at a sale closing or ‘because of the purchaser’s default under a contract to purchase the unit.’ Thus, the depository party has a duty of some care in being persuaded by a developer that the buyer has defaulted, at least where the buyer has notified the depository party of a conflicting position.”
(Emphasis added.) The purchasers argue that allowing Holiday Isle to draw on the letters of credit when they contest their default would violate § 35-8A-410.
Holiday Isle responds by arguing that the purchasers’ argument that their letters of credit are different from an escrow deposit under § 35-8A-410 because the underlying transaction involves the sale of condominium units is meritless and has no legal support. We agree. Section 35-8A-410 provides that “[a]ny deposit made in connection with the purchase of a [condominium] unit” shall be held in escrow “by a licensed title insurance company, an attorney, a licensed real estate broker, or an institution whose accounts are insured by a governmental agency or instrumentality until (i) delivered to the declarant at closing; (ii) delivered to the declarant because of the purchaser’s default under a contract to purchase the unit; or (iii) refunded to the purchaser.” Such language does not operate to preclude the parties from entering into an agreement in which, in lieu of an earnest-money deposit, a standby letter of credit is issued by a neutral bank and is payable to the beneficiary upon the purchaser’s default.[2]
The well-reasoned jurisprudence of this Court condemning injunctions against drawing upon letters of credit is fundamental and applies to the purchasers’ failure to close on the sale of the condominium units. If the proceeds of the letters of credit are disbursed and the purchasers’ default cannot later be established, the purchasers’ remedy is an action at law against the beneficiary of the letters of credit or perhaps against the depository party for want of due care in honoring the demand for payment as suggested by the Alabama Commentary to § 35-8A-410, an issue not before us.[3] Any other construc *1180 tion of the terms of the standby letters of credit would constitute judicial redrafting of the terms of the purchase agreements, which we decline to do.
We hold that the trial court’s rationale that the negotiation of the letters of credit should be enjoined because “the Letters of Credit are inextricably intertwined with the arbitration issues” is contrary to the well-settled law that letters of credit exist independently from the underlying transaction. See Benetton Servs. Corp., 551 So.2d at 298-99, Southern Energy Homes, Inc., 709 So.2d at 1185-86. The purchasers bargained for the advantages and disadvantages of electing to use a letter of credit in lieu of cash to satisfy their earnest-money deposit on the purchase of the their condominium units, and the fact that the AUCA provides that a deposit for a condominium unit is kept until default occurs does not protect a purchaser from the universal rule that an injunction preventing a beneficiary from drawing on a letter of credit is inappropriate. “The certainty of payment is the most important aspect of a letter of credit transaction, and this certainty encourages hesitant parties to enter into transactions, by providing them with a secure source of credit.” AmSouth Bank, N.A. v. Martin, 559 So.2d 1058, 1062 (Ala.1990). Accordingly, we hold that the trial court erred in granting the purchasers’ motion for a preliminary injunction.[4]
IV. Conclusion
The order of the trial court entering the preliminary injunction is reversed, and the case is remanded with instructions to dissolve the preliminary injunction.
REVERSED AND REMANDED WITH INSTRUCTIONS.
SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
*1181 MURDOCK, J., concurs in the result.
COBB, C.J., dissents.

. Chief Justice Cobb's challenge in her dissent to the fairness of the majority's sua sponte clarification of the standard of review proceeds on the false premise that adherence to the former standard would yield a different result.

. Chief Justice Cobb's dissenting opinion accepts the purchasers’ contention that the letters of credit are tantamount to trust funds, relying on the Alabama Commentary to § 35-8A-410 dealing with protection of creditors of the developer such as "the construction lender, material suppliers or contractors.” Of course, the purchasers are not within that category.

. The dissenting opinion recites factual disputes that are germane to the merits of the underlying controversy that gives rise to the request for injunctive relief. The relevance of these contested facts to a proceeding to enjoin the issuer from honoring a letter of credit is limited to the circumstances set forth in § 7-5-109, Ala.Code 1975, authorizing an injunction to prevent a material fraud by the beneficiary. This Court is committed to a narrow interpretation of the fraud exception to the general rule against the issuance of injunctions in letter-of-credit transactions. See Southern Energy Homes, Inc., 709 So.2d at 1186 ("The extensive use of the fraud exception may operate to transform the credit transaction into a surety contract.”). The commentary to § 7-5-109 describes extreme fact patterns illustrative of when the fraud exception applies, such as " ‘[wjhere the circumstances “plainly ” show that the underlying contract forbids the beneficiary to call a letter of credit; where they show that the contract deprives the beneficiary of even a “colorable ” right to do so; where the contract and circumstances reveal that the beneficiary’s demand for payment has "absolutely no basis in fact”; where the beneficiary’s conduct has “so vitiated the entire transaction that the legitimate purposes of the independence of the issuer’s obligation would no longer be served.” ' " (quoting Ground Air Transfer v. Westates Airlines, 899 F.2d 1269, 1272-73 (1st Cir.1990) (citations omitted)). No allegation of fraud is presented here. Further, the trial court's sole justification for *1180 issuing the injunction was based on its conclusion that "the Letters of Credit are inextricably intertwined with the arbitration issues.” Consequently, the mere presence of factual disputes as to the merits of the underlying controversy in this proceeding does not justify affirming the award of injunctive relief.

. The record contains a letter from counsel for Surety Land Title, Inc., which states that Surety had come into possession of the purchasers' letters of credit at some point after Bay Title Insurance Company, the escrow agent described in the purchase agreements, had resigned. No document from Bay Title corroborating Surety's assertion of Bay Title's resignation appears in the record. The dissenting opinion states: "With Holiday Isle in possession of the letters of credit instead of Bay Title, the 'licensed title insurance company' agreed upon by the parties, the purchasers have lost the benefit of a neutral escrow agent, the entity charged with maintaining the escrow trust fund with due care. This scenario creates the need for the preliminary injunction prohibiting Holiday Isle from negotiating the letters of credit without a favorable ruling from the arbitrator.” 12 So.3d at 1183. Even assuming Bay Title had in fact resigned as escrow agent, the controversy over the status of Bay Title or the authority of Surety as its successor is immaterial because the purchase agreements provide that the letters of credit were to be delivered to Holiday Isle and were merely “assignable” to the escrow agent. The purchase agreements state: "At Purchaser'[s] election, in lieu of cash for satisfaction of the Earnest Money Deposit, Purchaser, simultaneously with the execution of this Agreement, may deliver to Developer (as beneficiary), and assignable by Developer to Escrow Agent, a standby letter of credit .... ” The terms of the letters of credit issued by the purchasers' respective banks authorized Holiday Isle to make demand for payment directly upon the banks. Holiday Isle now has possession of the letters of credit. The dissenting opinion assumes, without foundation in the purchase agreements, that Holiday Isle was required to use the services of an escrow agent and that otherwise the purchasers have no neutral party, when the banks that issued the letters of credit have such status.