On Application for Rehearing

PITTMAN, Judge.
The opinion of this court of May 9, 2008, is withdrawn, and the following is substituted therefor.
Clint Folsom appeals from an order of the Shelby Circuit Court denying his request for a temporary restraining order to prevent Stagg Run Development, LLC *721 (“Stagg Run”), Homer Lynn Dobbs, Sr. (“Dobbs”), and Homer Lynn Dobbs, Jr. (“Lynn”),[1] from moving an easement that provides street and utility access to Folsom’s lot and crosses through part of Stagg Run’s property.
On January 6, 1984, Robert L. Burr executed an instrument creating an easement across certain property that he owned in Shelby County. The instrument was recorded in the probate judge’s office on March 6, 1984; the easement created by the instrument generally follows the course of a former dirt road, which is now a concrete driveway. The language of the instrument provides, in pertinent part:
“At a later date, if a new and shorter road is built with the entrance coming off Indian Trail all property owners would be expected to use this road, but the cost of this road would be for the owner or owners of Lots W, Y, and Z.
“At all times there will be a road which will be open so the owners of Lots W, X, Y, and Z can reach their property.”
Inside that easement, and running generally along the southern boundary lines of Lots W, Y, and Z, is the concrete driveway, which has provided Folsom’s only road access to his lot; the driveway meanders approximately one-half of a mile through mostly wooded property.
Stagg Run purchased several parcels of property from Burr that abutted Folsom’s lot on its southern and western boundaries (“the adjacent property”). Stagg Run purchased the adjacent property with the expressed intention to develop a residential subdivision that would border Folsom’s parcel on two sides. Folsom’s easement currently crosses through the central section of the adjacent property. As part of its subdivision-development process, Stagg Run had prepared a plat showing its intention to destroy the concrete driveway and to relocate all Folsom’s utility-service lines in order to “move” the easement to a more convenient location to facilitate placing houses in the proposed subdivision. Under Stagg Run’s plan, a new access road and Folsom’s utility-service lines would be located in a “new” easement that would branch off an extension of Deer Mountain Circle (renamed “Stagg Run Trail”) and not Indian Trail as provided in the recorded instrument creating Folsom’s existing easement.
Although Folsom’s property is located in an unincorporated area of Shelby County, the Stagg Run subdivision is situated in the City of Indian Springs (“the City”). Before trial, the City had issued its approval of the subdivision plans that included the proposed relocation of Folsom’s easement. On February 23, 2007, Folsom filed in the trial court, among other documents, a verified application for a temporary restraining order and a request for a preliminary injunction to prevent Stagg Run from relocating Folsom’s easement.
On March 6, 2007, the trial court conducted an ore tenus proceeding during which Folsom, Dobbs, and Melissa Cosby (a real-estate appraiser) testified regarding the planned subdivision and its impact on Folsom’s easement. Folsom testified that he feared Stagg Fun’s subdivision-construction plans would not only interrupt the utility conduits along the easement that were providing water and power to his residence and his workshop, but also that the heavy construction equipment would irreparably damage the concrete driveway before Stagg Run could provide Folsom alternative road access to his property.
*722 Folsom stated that he had purchased Lot X from Burr in 1994; after purchasing the lot, he had discovered that the utility lines serving his house were located beside the driveway and within the easement boundaries. In addition, Folsom stated that approximately six years before trial he had paid several thousand dollars to have a three-phase power line installed within the easement boundaries to provide electricity for his business, i.e., a workshop that he had built on his lot. Folsom testified that just before Stagg Run had completed its purchase of the adjacent property from Burr, he had determined that Stagg Run’s proposed subdivision, if built, would disrupt both his home business and access to his residence for an undetermined period of time and that he had decided that he could not agree to the Dobbses’ request for him to “waive” his easement rights. After Stagg Run had purchased the adjacent property, Folsom stated, he was informed that although the Dobbses were planning to destroy the concrete driveway, they did not intend to provide a new road or to relocate his utility-service lines until after completing construction of the subdivision. Based upon that information, Folsom stated that he had decided to file a request for an injunction to prevent Stagg Run from destroying access to his lot and from interrupting his utility services.
Melissa Cosby testified that while she was touring the initial excavation at the subdivision site with one of the county engineers, she had encountered Lynn, who was overseeing some of the construction and excavation work near Folsom’s easement. She testified that Lynn had told her that at the time Stagg Run began running heavy bulldozers across the easement boundaries the following week, the consequence to Folsom’s driveway would be to “bust it all to pieces.” Cosby stated that in answer to her query as to how Folsom would access his property during construction, Lynn had stated that he would level or grade the dirt every night so Folsom would have some access but that Stagg Run was “going to bust that driveway up.” Cosby testified that she had understood from Lynn that Stagg Run would begin excavating and moving large amounts of dirt across the easement within a few days of their conversation.
Regarding Stagg Run’s proposed subdivision, Dobbs testified that during the three months immediately before borrowing the funds to purchase the adjacent property, Stagg Run had been involved in a series of meetings with the City and Folsom to discuss the planned subdivision. Those meetings were held for the purposes of informing the community of Stagg Run’s plans, obtaining the City’s zoning and building permits for the subdivision, and seeking Folsom’s permission to move the easement and the utility-service lines within the easement to conform to the subdivision plat and plans. When Folsom did not initially object to Stagg Run’s plans, Stagg Run began the process of finalizing its land purchase of the adjacent property. Just a few days before closing the transaction, Dobbs sent Folsom a letter that contained a draft release form for Folsom to sign before Stagg Run would begin the relocation of the concrete driveway and utility lines. Folsom refused to sign the release and responded to Dobbs’s proposal by sending a letter in which he asserted that the construction of Stagg Run’s subdivision would impermissibly encroach upon his daily use of the easement and would interfere with his ownership of and his access to his residence and business. Folsom insisted that Stagg Run purchase the existing easement for $250,000 and that Stagg Run agree to construct and pave a new access road to Folsom’s lot and to relocate his utility lines *723 before beginning construction on the subdivision. When Stagg Run refused to comply with Folsom’s requests, Folsom sought a judicial remedy.
Following the ore tenus proceeding in March, the trial court entered an order on April 4, 2007, denying Folsom’s requests for injunctive relief. In that order, the trial court reserved most of the other issues that had been raised in the parties’ pleadings for a future trial on the merits; however, that court incidentally opined that Folsom would suffer no monetary damages should Stagg Run relocate the easement in compliance with its preap-proved subdivision plan.
From the trial court’s order denying injunctive relief, Folsom timely filed a notice of appeal to the Alabama Supreme Court. See Rule 4(a)(1)(A), Ala. R.App. P. However, our Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. The refusal to issue a preliminary injunction is an appeal-able order; Rule 4(a)(1)(A), Ala. R.App. P., provides that a party can appeal from “any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.” See Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 344 (Ala.2006). The standard for reviewing a trial court’s grant or denial of a preliminary injunction is whether the trial court acted outside its discretion in granting or denying the preliminary injunction. See also Watson v. Watson, 910 So.2d 765, 768 (Ala.2005).
“To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not dis-serve the public interest. Clark Constr. Co. v. Pena, 930 F.Supp. 1470 (M.D.Ala.1996). The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D.Ala.1998) [overruled on other grounds by Pryor v. Reno, 171 F.3d 1281 (11th Cir.1999) ]. The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits can finally determine the contest. [University of Texas v.] Camenisch, 451 U.S. [390,] 395, 101 S.Ct. 1830[, 1834 (1981) ].”
TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999); see also Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 271 (Ala.2006).
In this case, the trial court denied Folsom’s request for a preliminary injunction. Therefore, we must review the record to see if the trial court’s denial of Folsom’s request for injunctive relief was outside its discretion, i.e., whether “the trial court committed a clear or palpable error, which, if left uncorrected, would result in a manifest injustice.” Watson, 910 So.2d at 768. Under TFT, we must examine whether the trial court could have correctly determined that Folsom did not prove one of the required elements: that he was likely to prevail upon the merits, that there was a substantial threat of irreparable injury if the injunction was not granted, and that the threatened injury to Folsom would outweigh the harm the injunction might cause Stagg Run. We note that Folsom needed to prove all the elements set forth in TFT to obtain the preliminary injunction; if the trial court could *724 properly have determined that Folsom failed to prove any element, we must affirm the trial court’s order denying his request for injunctive relief.
On appeal, Folsom contends that, as a matter of law, Stagg Run does not have a legal right to relocate Folsom’s easement. Folsom also asserts that he will suffer irreparable harm if Stagg Run is permitted to relocate his easement. Folsom’s first contention — that Stagg Run could not lawfully “relocate” the easement — relies on his conclusion that our Supreme Court’s decision in West Town Plaza Associates, Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala.1993), mandates a judgment in his favor. In West Town, the trial court dismissed a request by the owner of a dominant estate for injunctive relief against the owner of a servient estate, but our Supreme Court reversed that decision, stating that “ ‘[t]he owner of the servient estate must abstain from acts interfering with the proper enjoyment of the easement by the owner of the dominant estate, and a court of equity has jurisdiction to enjoin the obstruction of private easements and to require the removal of such obstructions.’” West Town, 619 So.2d at 1296 (quoting Brown v. Alabama Power Co., 275 Ala. 467, 470, 156 So.2d 153, 155 (1963)).
In this case, however, Stagg Run does not propose a permanent obstruction of Folsom’s easement rights. As we read the pertinent language of the instrument creating the easement together with Stagg Run’s subdivision plan, we see, as the trial court apparently did, that Stagg Run is attempting to comply with the requirements of the instrument to upgrade and relocate the access road to Lots W, X, Y, and Z as stipulated in that instrument. Folsom acknowledges in his brief that the easement was created to allow access to Lots W, X, Y, and Z, which had each been owned by Burr when he created the easement in 1984. The record indicates that Stagg Run purchased at least two of those lots, W and Z, together with a larger parcel that abuts those lots on their southern boundary lines, in order to build its proposed subdivision.[2] Thus, in order to give meaning to the provision in the easement instrument that envisions the replacement of the road within the current easement at the expense of those persons owning Lots W, Y, and Z, the trial court properly interpreted that instrument language as allowing Stagg Run to “relocate” the road that constitutes the reason for the very existence of the easement so long as Stagg Run met the conditions that required absorbing the cost of providing a new, improved access road.
Alabama law is well settled that the trial court must look to the pertinent granting instrument to determine the scope of an express easement. Kerrigan v. Sherrer, 535 So.2d 74, 75 (Ala.1988). In construing the written grant of an easement to determine the intention of the parties, the plain meaning of the terms of that writing must be given effect. See Camp v. Milam, 291 Ala. 12, 16, 277 So.2d 95, 98 (1973). We conclude that the trial court did not err when it determined that the language of the instrument creating the easement specifically authorized the building of a new, shorter access road to Lots W, X, Y, and Z at the expense of the owners of Lots W, Y, and Z. Thus, the trial court’s denial of Folsom’s request for in-junctive relief from the “relocation” of the easement and the construction of a new access road was within the trial court’s discretion.
*725 Folsom also asserts that the trial court could not properly allow Stagg Run to “relocate” his easement without his permission or without just compensation. Folsom correctly notes that “[a]n easement is property.” Magna, Inc. v. Catranis, 512 So.2d 912, 918 (Ala.1987).
“The owner of a servient estate must abstain from acts interfering with or inconsistent with the proper enjoyment of the easement by the owner of the dominant estate. The fact that an obstruction to an easement is of a minor degree furnishes no standard for justification if the obstruction clearly interferes with the enjoyment of the easement.”
Id. (citations omitted); see also Lawley v. Abbott, 642 So.2d 707 (Ala.1994). Unlike easements by prescription or by adverse possession, when an easement is one created by express grant, the scope of the easement is to be determined according to the written language of the instrument creating the easement. See McClendon v. Hollis, 730 So.2d 229, 230 (Ala.Civ.App.1998); see also Lawley, 642 So.2d at 708.
In this case, the language in Folsom’s easement instrument clearly anticipated the movement of the access road at some future time. See, e.g., Hollis, 730 So.2d at 230. From its terms, the specific purpose of Folsom’s easement was to provide ingress and egress to lots W, X, Y, and Z; the record indicates that Stagg Run will provide Folsom with a code-compliant, two-lane, paved road to access his property, a road that will replace the concrete driveway that currently runs through the existing easement. The subdivision plans indicate that the new location of the easement, in compliance with the language of the easement instrument, will provide Folsom with a shorter, more direct access road to his property. Thus, we conclude that, based upon the reasoning in the above-cited cases, the trial court could properly have determined that Folsom did not prove either a likelihood of success on the merits or, alternatively, that Stagg Run’s proposed relocation of the access road would amount to a harm that could not be alleviated by legal remedies such as an award of money damages.
Without citing any authority, Folsom also asserts that his easement access cannot be relocated unless that access road is built from Indian Trail. Assuming, without deciding, that Folsom’s contention is properly before this court, we determine that his argument fails. The evidence established that Deer Mountain Circle is a cul-de-sac that is only accessible from Indian Trail and that Folsom’s present driveway begins at a location very close to the end of Deer Mountain Circle. In addition, the undisputed testimony of Dobbs established that the property lying between Indian Trail and Deer Mountain Circle is owned by an unidentified third party; Dobbs also opined that “the topography down there ... is so severe that I doubt it would be practical to try to put a road through there.”
In its judgment, under “Item 2,” the trial court apparently addressed Folsom’s assertion that the easement must be routed directly from Indian Trail and noted:
“B. Although executed in 1984, the document clearly contemplates the future re-location of the driveway. This particular provision contained several conditions, some of which are no longer applicable. However, it is the court’s opinion and finding that the overall intent of the parties to that document included the re-location of the driveway and the parties herein are successors in interest to the parties in that document.”
Our Supreme Court has stated that, in the exercise of its discretion, a trial *726 court “ ‘ “may consider and weigh the relative degree of injury or benefit to the respective parties.” ’ ” Adams v. Farlow, 516 So.2d 528, 537 (Ala.1987) (quoting Howell Pipeline Co. v. Terra Res., Inc., 454 So.2d 1353, 1356 (Ala.1984), quoting in turn Double C. Prods., Inc. v. Exposition Enters., 404 So.2d 52, 54 (1981)). This broad power to fashion equity judgments applies in the context of a proceeding in which injunctive relief is sought, and a trial court may refuse to grant injunctive relief as a component of its power to do equity in a given case. “A court may ‘balance the equities’ in deciding whether to grant an injunction, and may specifically consider the ‘convenience’ of the requested relief to both the plaintiff and the defendant.” Alabama Power Co. v. Drummond, 559 So.2d 158, 162 (Ala.1990); see also Beavers v. County of Walker, 645 So.2d 1365, 1377-78 (Ala.1994).
Based upon the undisputed evidence establishing that no access road reasonably could be constructed directly from Indian Trail to Folsom’s property because of the presence of an intervening owner’s property and because of the steep topography, we conclude that the trial court could properly have determined that the specification in the easement instrument concerning the location of the a new, improved access road should not be prospectively applied.
We conclude that the trial court properly denied Folsom’s request for injunctive relief; therefore, the trial court’s order denying Folsom injunctive relief and reserving the remaining issues for later resolution is due to be affirmed. In affirming, however, we note that the issue of “damage” to Folsom from the proposed relocation of the access road, which the trial court’s order denying injunctive relief briefly addressed, is not properly before this court. See Rule 4(a)(1)(A), Ala. R.App. P., and Woodward v. Roberson, 789 So.2d 853, 856 (Ala.2001). Failure to demonstrate an entitlement to injunctive relief does not preclude Folsom from the opportunity to seek and obtain an award of money damages[3] based upon any injury to Folsom’s rights resulting from Stagg Run’s relocation of the access road to Folsom’s property; because the trial court specifically reserved “the other issues” raised by the parties, any damages claim necessarily remains pending because there has been no final hearing in the case. See Woodward v. Roberson, 789 So.2d at 856, and Palmer v. SunBank & Trust Co., 689 So.2d 152, 153 (Ala.Civ.App.1996); see also Rule 54(b), Ala. R. Civ. P.
OPINION OF MAY 9, 2008 WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
MOORE, J., dissents, with writing, which BRYAN, J., joins.

. Dobbs and Lynn are the only members of Stagg Run.

. Certain evidentiary exhibits indicate that at some time between purchasing Lot X and filing this action, Folsom also purchased Lot Y.

. The record reflects that Stagg Run expected Folsom's property would experience occasional power outages and that only a dirt track would provide access to Lots W, X, Y, and Z during the construction process.