On February 23, 2007, Clint Folsom filed an application for a restraining order and for a preliminary injunction against Stagg Run Development, LLC ("Stagg Run"), Homer Lynn Dobbs, Sr. ("Dobbs"), and Homer Lynn Dobbs, Jr. ("Lynn"). The trial court denied Folsom's application on April 4, 2007. Folsom appealed, and this Court transferred the appeal to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals affirmed the trial court's order. Folsomv. Stagg Run Dev., LLC, [Ms. 2061126, Sept. 5, 2008]42 So.3d 719 (Ala.Civ.App. 2008). Folsom then petitioned this Court for a writ of certiorari, and we *Page 734 
granted the petition. We reverse and remand.
 I. Facts and Procedural History
Folsom testified at an ore tenus hearing before the trial court that he purchased a house and several acres of real property ("the Folsom property") in Shelby County in 1994 or 1995. The Folsom property is landlocked except for a driveway that arches west-southwest from the property and then runs south to Deer Mountain Circle. The driveway is approximately one-half mile long. Almost the entire driveway crosses property that in 1984 was owned by Robert Burr, Sr. On March 6, 1984, Burr recorded an instrument that described the location of the driveway in detail, noting its origin at Deer Mountain Circle. The instrument stated that the future purchasers of Lots W, Y, and Z, parcels located west of the Folsom property and adjacent to the driveway, were to have use of the driveway to access their properties. The instrument also stated:
 "At a later date if a new and shorter road is built with the entrance coming off of Indian Trail
all property owners would be expected to use this road, but the cost of this road would be for the owner or owners of Lots W, Y, and Z. Maintenance later would be shared equally.
 "At all times there will be a road which will be open so the owners of [the Folsom property and] Lots W, . . . Y, and Z can reach their property."
(Emphasis added.) Indian Trail is a nearby road due west of the Folsom property and running from north to south. Deer Mountain Circle originates from Indian Trail at a point southwest of Folsom's property and is perpendicular to Indian Trail. A road connecting Folsom's property to Indian Trail at its closest point to the property would run east to west.
At all times relevant to this action, Folsom has maintained that the 1984 instrument created an easement across Robert Burr, Sr.'s property in favor of the Folsom property. The Court of Civil Appeals treated the 1984 instrument as creating an easement, and Stagg Run, Dobbs, and Lynn (collectively "the defendants") do not challenge that conclusion. Accordingly, for purposes of this opinion, we will accept the characterization of the 1984 instrument as creating an easement.
In 1984, the driveway was a dirt road; however, it was paved with concrete before Folsom purchased his property. The electric, water, natural gas, and telephone utility lines that service the buildings on the Folsom property are located within the easement. Upon Burr's death, his son, Robert Burr, Jr., owned the property on which the easement is situated. Folsom testified that neither Burr nor his son ever objected to Folsom's use of the driveway or the installation of utilities along the easement.
On January 23, 2007, Robert Burr, Jr., sold to Stagg Run property located to the west and south of the Folsom property, including the property servient to the easement ("the subdivision property"). Dobbs and his son, Lynn, own Stagg Run and planned to develop the subdivision property into a residential subdivision. The record includes a map of the proposed subdivision, which shows that the easement crosses approximately 6 of the 25 planned lots and a significant portion of a planned road. A map showing the footprint of the proposed subdivision and its relationship to Deer Mountain Circle and Indian Trail is attached as Appendix A. Stagg Run contemplated "relocating" the driveway to the Folsom property so that it did not interfere with development of the lots and the road in the subdivision. A map showing the existing driveway and *Page 735 
the proposed relocation of the driveway is attached as Appendix B. Pursuant to the proposed relocation, the Folsom property would be accessed via Deer Mountain Circle by taking a subdivision road known as Stagg Run Cove, another subdivision road known as Stagg Run Trial, and finally a 25-foot-wide right-of-way between two lots in the subdivision. The proposed relocation does not connect directly to Indian Trail; it meanders from the Folsom property to the southwest in a path similar to the existing driveway. It is undisputed that this route was not a "shorter road . . . with the entrance coming off of Indian Trail" described in the 1984 instrument.
Dobbs testified that the defendants could not construct a road from Indian Trail to the Folsom property because they did not own all the property between Indian Trail and the Folsom property. Dobbs also stated that it would not be "practical" to construct a road between Indian Trail and the Folsom property because of the topography of the area; however, he admitted that he was not an engineer and he could not say for certain that such a road could not be constructed. Melissa Cosby, a friend of Folsom's, testified that she had worked as a real-estate appraiser for 27 years and that she was familiar with the Indian Springs area, an area near the Folsom property. When questioned by the defendants' counsel, she stated that she did not know whether it would be possible to construct a road from Indian Trail to the Folsom property. Dobbs and Cosby were the only witnesses who testified regarding the feasibility of a road connecting the Folsom property with Indian Trail.
The parties dispute whether, in early December 2006, Folsom orally agreed to the proposed relocation of the driveway. The parties also dispute the nature of Dobbs's representations to Folsom in early December 2006 regarding the duration and extent to which the driveway and utility service to the Folsom property would be disrupted. However, it is undisputed that in mid-December 2006 Folsom refused to sign documents that would surrender to Stagg Run his rights in the easement. Stagg Run subsequently completed its purchase of the subdivision property. Dobbs testified that, before completing the purchase, the defendants were aware of the 1984 instrument, of the location of the driveway, and of the fact that the utilities to the Folsom property ran along the driveway. It is undisputed that at the time Stagg Run purchased the subdivision property, the defendants were aware of Folsom's refusal to surrender the easement.
The subdivision property was annexed into the town of Indian Springs and was zoned for development as a residential subdivision; however, it is unclear precisely when the annexation and zoning changes occurred. Indian Springs also approved Stagg Run's development plan, pursuant to which the driveway to the Folsom property would be relocated. Folsom admitted that he never attended any public hearings regarding the subdivision; he denies receiving notices of any such hearings. Stagg Run began clearing the subdivision property sometime before Folsom filed his application for a restraining order and for a preliminary injunction on February 23, 2007.
Cosby testified that she visited the subdivision property shortly before Folsom filed his application. According to Cosby, she happened to meet Lynn when she visited the property; he told her that, in clearing and constructing the roads in the subdivision, the defendants would "bust [the driveway to the Folsom property] all to pieces." Cosby testified that when she inquired about access to the Folsom property if the driveway were destroyed, Lynn *Page 736 
stated that the defendants would grade a path each night so that a vehicle could drive through. Cosby also stated that Lynn acknowledged that Folsom's utility service would be disrupted and that he did not know when the service would be reconnected. Cosby testified that Lynn also indicated his refusal to reconnect the "three-phase" electrical lines that currently served the Folsom property.
To support his application for a restraining order and a preliminary injunction, Folsom attached Cosby's affidavit in which she stated that Lynn had told her that the construction work that would destroy the driveway and disrupt utility service to the Folsom property could begin as early as February 26, 2007. The defendants responded to Folsom's application and filed a counterclaim. After the trial court held a hearing, Folsom amended his application to add a request for a permanent injunction.
In its April 4, 2007, order denying Folsom's application for a restraining order and for a preliminary injunction, the trial court determined that the 1984 instrument granted Folsom the right to use the driveway but found that the "overall intent" of the instrument was to relocate the driveway. The trial court did not expressly address the condition in the 1984 instrument that any new driveway come off Indian Trail; however, it found that "some" conditions of the 1984 instrument were "no longer applicable." The trial court then stated:
 "The existing driveway, according to the undisputed evidence, is nine feet wide and in need of repair. It is apparent and the Court finds that [Folsom] will have a much improved and shorter access to his property if the driveway is relocated as shown on the said subdivision plat and will have suffered no damage after compliance by the Defendants with the conditions hereinafter set forth in this order."
The Court of Civil Appeals affirmed the trial court's order. It concluded that "the trial court could properly have determined that Folsom did not prove either a likelihood of success on the merits or, alternatively, that Stagg Run's proposed relocation of the access road would amount to a harm that could not be alleviated by legal remedies such as an award of money damages." 42 So.3d at 725. In his petition for a writ of certiorari, Folsom contended that the Court of Civil Appeals' decision conflicts with this Court's decisions in West TownPlaza Assocs., Ltd. v. Wal-Mart Stores, Inc.,619 So.2d 1290 (Ala. 1993), and Magna, Inc. v. Catranis,512 So.2d 912 (Ala. 1987). See Rule 39(a)(1)(D), Ala. R.App. P.
 II. Standard of Review
The standard of review on a petition for a writ of certiorari is settled.
 "In reviewing a decision of the Court of Civil Appeals on a petition for a writ of certiorari, this Court `accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.' Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala. 1996)."
Ex parte Exxon Mobil Corp., 926 So.2d 303, 308
(Ala. 2005). This Court recently stated the standard of review of a trial court's grant or denial of a preliminary injunction as follows:
 "A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
 "`"(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the *Page 737 
[party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction]."`
 "Ormco Corp. v. Johns, 869 So.2d 1109, 1113
(Ala. 2003) (quoting Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala. 1994)).
 ". . . `We review the [trial court's] legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion.' Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428 (2006)."
Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176
(Ala. 2008). Accordingly, "[t]o the extent that the trial court's issuance [or denial] of a preliminary injunction is grounded only in questions of law based on undisputed facts," this Court applies a de novo standard of review to the trial court's decision. Id.
 III. Analysis
The material facts of this case are undisputed. Pursuant to the 1984 instrument, an easement exists in favor of the Folsom property as the dominant estate. The subdivision property owned by the defendants is the servient estate over which the easement extends. The driveway and the utility service to the Folsom property extend over the easement. The 1984 instrument provided that the rights associated with the easement would terminate or the easement would be relocated "[a]t a later dateif a new and shorter road is built with theentrance coming off of Indian Trail" (Emphasis added.) The alternate access to the Folsom property proposed by the defendants is not a shorter road with the entrance coming off Indian Trail.
Because these facts are undisputed, our review of the trial court's determination is de novo. Holiday Isle,12 So.3d at 1176. See also Salter v. Hamiter,887 So.2d 230, 233-34 (Ala. 2004) (noting that the principle that a trial court's findings of fact based on ore tenus testimony are presumed correct "is not applicable where the evidence is undisputed, or where the material facts are established by the undisputed evidence" and that "[w]hen the trial court `improperly applies the law to the facts, the presumption of correctness otherwise applicable to the trial court's judgment has no effect'" (quoting Ex parte Board of ZoningAdjustment of Mobile, 636 So.2d 415, 418 (Ala. 1994))).
In West Town Plaza Associates, Ltd, v. Wal-Mart Stores,Inc., 619 So.2d 1290 (Ala. 1993), Wal-Mart subleased retail space from F.W. Woolworth Company. The original lease agreement included an easement that granted the lessee rights to certain parking spaces. 619 So.2d at 1292-93. Without Wal-Mart's consent, the lessor's assignee, West Town Plaza Associates, began constructing a building in the area of Wal-Mart's easement so that Wal-Mart was deprived of the use of the parking spaces specified in the lease agreement.619 So.2d at 1293. West Town Plaza offered to provide Wal-Mart with additional parking spaces, more than Wal-Mart was entitled to under the easement, after construction of the building was completed. Wal-Mart sought and was granted injunctive relief, which required West Town Plaza to remove the building, which had been completed, and to restore the parking spaces to their original condition. West Town Plaza appealed.
This Court concluded that the easement was not ambiguous and that it granted Wal-Mart rights "over an area of real property, not just a right to a minimum number of parking spaces." *Page 738 
619 So.2d at 1295. This Court described Wal-Mart's rights under the easement, stating:
 "`An easement, although an incorporeal right, . . . is yet properly denominated an interest in land, . . . and the expression "estate or interest in lands" is broad enough to include such rights; for an easement must be an interest in or over the soil' Oates v. Town of Headland, 154 Ala. 503, 505, 45 So. 910, 911 (1908) (quoting 14 Cyc. 1139, nn. 6 and 7)."
619 So.2d at 1295. In addressing West Town Plaza's argument that the trial court erred in ordering the removal of the building that West Town Plaza had already constructed over Wal-Mart's parking spaces, this Court explained:
 "`The owner of the servient estate must abstain from acts interfering with the proper enjoyment of the easement by the owner of the dominant estate, and a court of equity has jurisdiction to enjoin the obstruction of private easements and to require the removal of such obstructions.' Brown v. Alabama Power Co., 275 Ala. 467, 470, 156 So.2d 153
(1963) (citations omitted); see also Potts v. Water Works Bd., City of Aliceville, 267 Ala. 46, 100 So.2d 16 (1958); Alabama Power Co. v. Ray, 260 Ala. 506, 71 So.2d 91 (1954).
 "The Overlease and the Sublease granted Wal-Mart an easement in land, a property right, not merely a right to a number of parking spaces. The Blockbuster building was estimated to occupy an area equal to approximately 30 to 34 parking spaces. West Town Plaza's construction of the Blockbuster building permanently deprived Wal-Mart of part of its easement granted under the lease agreements. Such an obstruction of Wal-Mart's easement is clearly an injury or harm for which money damages are inadequate and for which the trial court has jurisdiction, in its sound discretion, to enjoin and order removed."
West Town Plaza, 619 So.2d at 1296. This Court affirmed the trial court's order granting Wal-Mart injunctive relief.
Folsom argues that the Court of Civil Appeals' decision and the trial court's order denying his application for injunctive relief conflict with this Court's decision in West TownPlaza. We agree. The 1984 instrument granted the owner of the Folsom property certain rights, specifically the right to use the area of real property described in the instrument, not merely the right to access his property. It is undisputed that construction of the subdivision had begun according to the plans approved by the town of Indian Springs. As a necessary part of that construction, the utilities servicing Folsom's residence and business located on the Folsom property would be disrupted and the driveway would be destroyed. More than that, pursuant to the subdivision plan, after the subdivision is completed and homes and roads are constructed therein, Folsom will no longer have any access to the easement. Although the defendants offer an alternate means of access to the Folsom property, it is undisputed that they intend to, and have begun the process of, permanently depriving Folsom of the easement granted by the 1984 instrument. Such an obstruction to a property right is "clearly an injury or harm for which money damages are inadequate." 619 So.2d at 1296.
Folsom also contends that the Court of Civil Appeals' decision and the trial court's order conflict with this Court's decision in Magna, Inc. v. Catranis, 512 So.2d 912 (Ala. 1987).Magna involved facts similar to those in West TownPlaza. An easement granted Magna the use and enjoyment of certain parking spaces. The owner of the servient estate constructed a kiosk over four of the parking spaces, thus *Page 739 
depriving Magna of the use of those spaces. The trial court concluded that Magna was not entitled to relief because it did not need the parking spaces. Magna appealed, and this Court reversed the trial court's judgment.
This Court stated: "An easement is property," and explained:
 "The fact that an obstruction to an easement is of a minor degree furnishes no standard for justification if the obstruction clearly interferes with the enjoyment of the easement. Brown v. Alabama Power Co., 275 Ala. 467, 471, 156 So.2d 153, 157
(1963).
 "Magna and its licensees, invitees, tenants, successors, and assigns, have the non-exclusive right to use each square foot of the property on which it has an easement for ingress and egress and parking of vehicles. This is a property right. Our respect for property rights will not permit us to diminish or reduce Magna's rights simply because neither Magna nor its tenant needs all the property to which it has property rights. Certainly, our federal and state constitutions protect such rights and would prohibit judicial deprivation or diminution of such rights based solely upon a judicial determination of an owner's lack of need for such property. The implications of a contrary result would be frightening."
Magna, 512 So.2d at 913-14. We agree that the trial court's conclusion that the proposed relocation of the driveway to the Folsom property excuses the defendants' interference with the easement conflicts with this Court's decision inMagna.
This Court, in Magna, refused to sanction interference with an easement, a property right, on the basis that the owner of the dominant property did not have need of the easement. As an initial matter, the record does not show that Folsom does not need the easement to access the Folsom property. Rather, the reverse is true; it is undisputed that the Folsom property is landlocked without the easement. Next, the defendants contend that the alternate means of access they propose to give Folsom after construction of the subdivision is completed obviates Folsom's need of the easement. However, under the principles stated in Magna, Folsom has property rights in the easement that may not be interfered with on the basis of a lack of need.
Similarly, in West Town Plaza, the fact that West Town Plaza was to provide Wal-Mart with additional, and presumably better, parking spaces was unavailing. In this case, the defendants' arguments that they will provide Folsom with a new, presumably better, means of access to the Folsom property is likewise unavailing. The 1984 instrument granted Folsom rights to a specific area of property. This Court will not interfere with those rights based on a presumably better alternative, seeMagna, supra, and the defendants, as "owner[s] of the servient estate[,] must abstain from acts interfering with the proper enjoyment of the easement by the owner of the dominant estate. . . ."West Town Plaza, 619 So.2d at 1296.
The defendants argue that the relocated driveway they offer Folsom complies with the conditions of the 1984 instrument and, as a result, they say, they are not permanently depriving Folsom of his rights under the easement. First, they contend that the relocated driveway "originates" at Indian Trail and satisfies the condition of the 1984 instrument that the relocated access have an entrance off Indian Trail. However, the access proposed in the subdivision plan would require Folsom to traverse Stagg Run Trail, Stagg Run Cove, and Deer Mountain Circle before reaching Indian Trail. We cannot agree *Page 740 
that access that leads to a road, that in turn leads to a road, that in turn leads to another road, that then leads to Indian Trail is "a new and shorter road . . . with the entrance coming off of Indian Trail" within the meaning of the 1984 instrument. A road to Indian Trail from the Folsom property such as the 1984 instrument contemplates would extend due west and thus be a shorter route to Indian Trail than the existing driveway to the Folsom property. The alternate route the defendants propose is a roundabout way to Deer Mountain Circle, much like Folsom's existing driveway. It is not shorter, and it does not have an entrance off Indian Trail.
The only evidence presented to the trial court regarding the feasibility of constructing a shorter road between Indian Trail and the Folsom property indicated that the topography of the area made it "impractical" and that the defendants did not own the property necessary for such an undertaking. Difficulties in topography or ownership cannot justify the disregard of the unambiguous requirements of the easement for altering the existing driveway.
Next, the defendants argue, and the trial court and the Court of Civil Appeals agreed, that the alternate access they propose complies with the easement because, they say, the 1984 instrument contemplates a relocation of the driveway and their proposed alternate route is, in fact, a relocation of the driveway. However, the 1984 instrument does not contemplate any relocation. Instead, it provides for relocation "if a new and shorter road is built with the entrance coming offof Indian Trail." This language is not ambiguous, and "`in the absence of ambiguity the court cannot interpret the contract but must take it as it is written.'" West TownPlaza, 619 So.2d at 1294 (quoting Darling Shop ofBirmingham, Inc. v. Nelson Realty Co., 255 Ala. 586, 591,52 So.2d 211, 215 (1951)). By its language, the 1984 instrument conditions relocation of the easement on the construction of a road shorter than the existing driveway with an entrance at Indian Trail. It is this road that is to replace the existing easement. The alternate means of access the defendants propose is not such a road, and the condition established by the 1984 instrument has not been satisfied.
Accordingly, Folsom has satisfied the requirements for a preliminary injunction. See Holiday Isle, LLC v.Adkins, supra. Folsom has shown that he will be permanently deprived of access to and use of the easement. Thus, he has shown that he will suffer irreparable injury and that a remedy at law will not be adequate. See West TownPlaza, supra. The undisputed facts show that Folsom has at least a reasonable chance of success on the merits. Finally, the hardship imposed on the defendants by an injunction would not unreasonably outweigh the benefit to Folsom in preserving his property rights conferred by Stagg Run's predecessors in title. See Magna, supra.
 IV. Conclusion
Based on the foregoing, we conclude that Folsom has satisfied the requirements for a preliminary injunction and that the trial court exceeded its discretion in denying Folsom's application. We reverse the Court of Civil Appeals' decision and remand the cause to the Court of Civil Appeals for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur. *Page 741 
Exhibit *Page 742 
Exhibit *Page 743